CADLEROCK JOINT VENTURE II, L.P. *v.*
MARIE C. MILAZZO ET AL.
(SC 18001)

Rogers, C. J., and Norcott, Katz, Zarella and Schaller, Js.

Argued February 5—officially released June 24, 2008

*David A. Lavenburg*, for the appellant (plaintiff).

*Richard F. Connors*, for the appellee (defendant Wageeh S. Aqleh).

Opinion

ZARELLA, J. In this action on a promissory note, the plaintiff, Cadlerock Joint Venture II, L.P., appeals from the summary judgment rendered in favor of the defen-

dant Wageeh S. Aqleh[1] on the ground that the plaintiff had failed to commence the action within the applicable statute of limitations. The plaintiff claims that the trial court improperly granted the defendant's motion for summary judgment because (1) the statute of limitations was tolled by the defendant's absence from the country, (2) the defendant improperly was allowed to relitigate jurisdictional issues decided by the court when it denied his prior motion to dismiss, and (3) the court previously had obtained personal and in rem jurisdiction over the defendant when the order of notice was issued on October 18, 2004. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On July 17, 1991, Michael Milazzo, president of Melina Enterprises, Inc. (Melina), executed a commercial note in favor of Connecticut Savings Bank (bank) in the principal amount of $175,000, payable in full, together with interest, on July 1, 1996.[2] The note was guaranteed by seven individuals, including Michael Milazzo and the defendant. In an agreement of guaranty and suretyship dated July 17, 1991, the defendant "absolutely and unconditionally" guaranteed to the bank and its successors, endorsees and assigns, full and prompt payment of all liabilities and indebtedness arising under the note. The defendant also waived all rights to notice and a hearing prior to any attempt by the bank to obtain a prejudgment rem-

[1] The plaintiff brought this action against five defendants, namely, Melina Enterprises, Inc., Marie C. Milazzo, Barbara N. Milazzo, Wageeh S. Aqleh and Susan Aqleh. We hereinafter refer to these five parties collectively as the defendants. Because the defendant Wageeh S. Aqleh is the only defendant involved in this appeal, we hereinafter refer to him individually as the defendant.

[2] The note set forth a schedule for monthly payments of principal and interest during the five year repayment term.

edy,[3] and all rights to a jury trial and personal service of process.[4] The agreement further stipulated that service was to be made by registered mail at 50 Highcrest Drive in Rocky Hill, the defendant's alleged address, and would be deemed completed upon actual receipt.

Thereafter, Melina defaulted on the note for failure to make the required payments when due. The defendant also defaulted under the guaranty and suretyship agreement. On or about July 25, 1997, the bank assigned the note to the plaintiff.

In October, 1998, the plaintiff brought the present action against Melina, the defendant and three other individual guarantors, Marie C. Milazzo, Barbara N. Milazzo and Susan Aqleh.[5] Because the plaintiff knew that the defendant no longer resided at the Rocky Hill address, the sheriff made abode service on October 6, 1998, by leaving the summons and complaint at 53 Cambridge Drive, Unit A, in Newington, where the defendant was believed to reside.[6]

---

[3] Paragraph twenty-one of the agreement provides: "The undersigned hereby acknowledges that the transactions of which this guaranty is a part are commercial transactions as that term is defined in [§ 52-278a] of the Connecticut General [Statutes], as amended, and the undersigned hereby voluntarily and knowingly waives and relinquishes any and all rights which it may have, pursuant to any law or constitutional provision, including without limitation, [§ 52-278a et seq.] of the Connecticut General [Statutes], to any notice or hearing prior to any attempt by the bank to obtain a prejudgment remedy against the undersigned in connection with such transactions."

[4] Paragraph twenty-two of the agreement provides: "The undersigned hereby consents to the jurisdiction of any state or federal court located within Connecticut and waives personal service of any and all process upon, and consents that all such service or process be made by registered mail directed to the undersigned at the address stated below and service so made shall be deemed to be completed upon actual receipt thereof. The undersigned waives trial by jury and waives any objection to venue of any action instituted hereunder and consents to the granting of such legal or equitable relief as deemed appropriate by the court."

[5] The other three individual guarantors were not named as parties to this action.

[6] In his deposition, the defendant testified that he had lived in several different locations between 1991 and 2002 because of changes in his employ-

On December 16, 1998, the trial court granted the plaintiff's motion for default against the defendants for failure to appear. On February 11, 1999, attorney Thomas G. Benneche filed an appearance for Marie C. Milazzo, Barbara N. Milazzo and Susan Aqleh. Subsequent court records incorrectly indicated that Benneche also appeared for the defendant.[7] Benneche certified that a copy of the appearance form had been mailed or delivered to all counsel of record.

On December 18, 2002, the plaintiff attached property that the defendant owned at 582 Skiff Street in North Haven pursuant to General Statutes § 52-278f,[8] which permits prejudgment attachments without notice and a hearing in actions involving commercial transactions when a defendant, as in the present case, has waived his right to notice and a hearing. The marshal's return stated that copies of the writ of attachment, summons,

---

ment. Sometime after he signed the guaranty and suretyship agreement in 1991, he vacated the townhouse that he had been renting in Rocky Hill and moved to a house that he owned in North Haven. In the spring of 1993, he moved to Rhode Island, where he resided until June, 1995. Upon returning to Connecticut in 1995, he resided at 53 Cambridge Drive, Unit A, in Newington. In October, 1997, he moved back to his North Haven property. On or about March 1, 2002, he moved to Dubai, United Arab Emirates. The defendant continues to reside in the United Arab Emirates but maintains ownership of the North Haven property, which he rents to a tenant.

[7] Court records indicate that, at least through 2002, the defendant was represented by Benneche.

[8] General Statutes § 52-278f provides: "In an action upon a commercial transaction, as defined in section 52-278a, wherein the defendant has waived his right to a notice and hearing under sections 52-278a to 52-278g, inclusive, the attorney for the plaintiff shall issue the writ for a prejudgment remedy without securing a court order provided that (1) the complaint shall set forth a copy of the waiver; (2) the plaintiff shall file an affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff; and (3) the plaintiff shall include in the process served on the defendant a notice satisfying the requirements of subsections (b) and (c) of section 52-278e."

complaint and notice of the ex parte prejudgment remedy had been served at the defendant's usual place of abode, 582 Skiff Street in North Haven, and with the North Haven town clerk.

A copy of the writ of attachment was sent to Benneche in the belief that he had appeared for the defendant on February 11, 1999. See General Statutes § 52-278m.[9] The plaintiff's understanding that Benneche had appeared for the defendant was based on the incorrect court records and a letter dated October 8, 1998, from Benneche to the plaintiff's attorney, Paul M. Gaide. In the letter, Benneche stated that the "[d]efendants" had contacted him "en masse" to file for bankruptcy and had authorized him to make a settlement offer to the plaintiff "in full satisfaction of [the] claim against all [d]efendants . . . ."

The defendant subsequently admitted receiving actual notice of the attachment in late December, 2002, or early January, 2003.[10] On March 24, 2003, attorney Richard F. Connors filed an appearance for the defendant. On that date, the defendant, pursuant to Practice Book § 10-30,[11] filed a motion to dismiss the action for lack of jurisdiction due to insufficient service. The defendant claimed that, although the sheriff's return indicated that process had been served at the defen-

---

[9] General Statutes § 52-278m provides: "Whenever a prejudgment remedy is sought under the provisions of sections 52-278h or 52-278i against a party who has previously filed a general appearance in such action, personal service of any application or order upon such party shall not be required, unless ordered by the court, but any such application or order may be served in the same manner as any motion in such action."

[10] The defendant testified in his deposition that the tenant of his North Haven property had received the process and informed the defendant's property manager, who subsequently faxed copies to the defendant in the United Arab Emirates.

[11] Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."

dant's usual place of abode, the address so identified was not his usual place of abode on the date of service. The defendant attested in an affidavit appended to the motion that he had not resided at 53 Cambridge Drive, Unit A, in Newington for at least one year prior to service of process. In a second affidavit appended to the motion, Marie Scelza, manager of the Cambridge Drive property, confirmed that the defendant had vacated his rental unit in October, 1997. On April 12, 2004, while the defendant's motion to dismiss was pending, the plaintiff perfected the attachment by filing an application for an order directing that notice of the attachment be given to the defendant by serving a copy of the writ of attachment, complaint and marshal's return on the defendant's attorney. See General Statutes § 52-284.[12]

On August 19, 2004, the trial court denied the defendant's motion to dismiss without prejudice so that it could hear the parties on the plaintiff's application. In its memorandum denying the motion, the court stated that it assumed that the plaintiff had not sought an order of notice when the property was attached in December, 2002, because it had relied on incorrect court records indicating that the defendant was represented by Benneche and thus believed that notice was unnecessary. The court, citing *White-Bowman Plumbing & Heating, Inc.* v. *Biafore*, 182 Conn. 14, 437 A.2d 833 (1980), then

---

[12] General Statutes § 52-284 provides in relevant part: "When the defendant is not a resident or inhabitant of this state and has estate within the same which has been attached, a copy of the process and complaint, with a return describing the estate attached, shall be left by the officer with the agent or attorney of the defendant in this state if known . . . . In addition, the court to which such action is returnable, or any judge, clerk or assistant clerk thereof shall make such order of notice to the defendant as is deemed reasonable to apprise him of the institution or pendency of such complaint and attachment. Such notice, having been given and proved, shall be deemed sufficient service of process in such action, and such attachment shall thereupon become effective against such estate and the defendant in such action."

observed that the presence of the pending motion to dismiss did not preclude the court from issuing an order of notice. Consequently, because the defendant's property had been attached and it appeared that the defendant was not a resident of the state, the court had authority to issue the order to apprise the nonresident defendant of the attachment and of the pendency of the action. After denying the motion to dismiss without prejudice, the court stated that it would proceed with an evidentiary hearing on the plaintiff's application. On October 18, 2004, the court granted the application. On November 3, 2004, notice was served on the defendant's attorney.

On January 13, 2005, the defendant filed an answer denying the allegations in the plaintiff's complaint and raising two special defenses, claiming, first, that service had been ineffective and, second, that the statute of limitations had expired. On September 19, 2005, the defendant filed a motion for summary judgment on the ground that the plaintiff had not commenced the action within the applicable six year statute of limitations and, therefore, that the action was barred by General Statutes § 52-576,[13] it being undisputed that the action had accrued on July 1, 1996, when the commercial note matured. On November 4, 2005, the court granted the plaintiff's request for a ninety day stay of the proceedings so that the parties could conduct additional discovery on the jurisdictional issue. On April 14, 2006, the defendant was deposed, and his affidavit was appended to his summary judgment motion. An affidavit dated April 28, 2006, by Peter Barta, assistant vice president of the plaintiff, was appended to the plaintiff's amended objection to the motion. The court held a hearing on

---

[13] General Statutes § 52-576 provides in relevant part: "(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

May 8, 2006, and granted the motion on August 1, 2006. The court reasoned that the plaintiff's attempted abode service on October 6, 1998, had been ineffective and had not commenced the action because, as reflected in the defendant's and Scelza's affidavits, the defendant was not living at the Newington address on the date of service. The court also concluded that the statute of limitations, which expired on July 1, 2002, had not been tolled by the defendant's absence from Connecticut because he was amenable to suit in the United Arab Emirates under Connecticut's long arm statute, General Statutes § 52-59b,[14] by service on the secretary of the state and by sending a copy of the process to his last known address. The court based its conclusion on the undisputed facts that the defendant had signed a guar-

---

[14] General Statutes § 52-59b provides in relevant part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state . . . .

"(b) Where personal jurisdiction is based solely upon this section, an appearance does not confer personal jurisdiction with respect to causes of action not arising from an act enumerated in this section.

"(c) Any nonresident individual . . . over whom a court may exercise personal jurisdiction, as provided in subsection (a) of this section, shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State and shall have the same validity as if served upon the nonresident individual . . . personally. The process shall be served by the officer to whom the same is directed upon the Secretary of the State by leaving with or at the office of the Secretary of the State, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at the defendant's last-known address, by registered or certified mail, postage prepaid, return receipt requested, a like true and attested copy with an endorsement thereon of the service upon the Secretary of the State. . . ."

We note that, although § 52-59b has been amended several times since 1998; see Public Acts 2004, No. 04-240, § 25; Public Acts 2000, No. 00-191, § 5; Public Acts 1999, No. 99-160, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 52-59b.

antee to a note financing the expansion of a Connecticut business, that he had signed the note while he was in Connecticut and a Connecticut resident, and that he subsequently had left Connecticut to reside in the United Arab Emirates. The court did not decide whether the action had commenced when the plaintiff attached the defendant's North Haven property in December, 2002, because the attachment had occurred more than five months after expiration of the statute of limitations.

The plaintiff subsequently filed a motion to reargue, which the trial court denied. On January 8, 2007, the plaintiff also filed a motion seeking articulation of the facts relied on by the trial court in concluding that the plaintiff could have complied with the service requirements of § 52-59b. The trial court denied the motion.[15] This appeal followed.[16]

I

The plaintiff first contends that the trial court improperly granted the defendant's motion for summary judgment because it incorrectly concluded that the plaintiff's claims were time barred. The plaintiff specifically contends that the six year statute of limitations was tolled, in accordance with General Statutes § 52-590,[17] when the defendant left the country because he was not amenable to service of process by certified

---

[15] On April 11, 2007, the Appellate Court granted the plaintiff's motion for review of the trial court's denial of the motion for articulation but denied the relief requested therein.

[16] The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[17] General Statutes § 52-590 provides in relevant part: "In computing the time limited in the period of limitation prescribed under any provision of . . . this chapter, the time during which the party, against whom there may be any such cause of action, is without this state shall be excluded from the computation, except that the time so excluded shall not exceed seven years."

mail under § 52-59b.[18] The defendant responds that he was amenable to substituted service under § 52-59b (c) between March 1, 2002, when he left for the United Arab Emirates, and July 1, 2002, when the statute of limitations expired, because he had made arrangements to have his mail forwarded by the United States Postal Service to a relative in the United States. We conclude that there is no genuine issue of material fact as to whether the defendant was amenable to service after he moved to the United Arab Emirates. Accordingly, the trial court properly granted the defendant's summary judgment motion.

The following additional undisputed facts are relevant to our resolution of this issue. In his deposition, the defendant testified that, after he moved to the United Arab Emirates on or about March 1, 2002, his wife remained in their North Haven home until late June, 2002. Upon leaving Connecticut to rejoin her husband in the United Arab Emirates,[19] she completed a change of address card directing the post office in North Haven to forward all of the family's mail to her uncle's residence in Texas for approximately six months. Thereafter, her uncle kept the defendant apprised by telephone of mail that had been forwarded from their North Haven address.

In Barta's affidavit for the plaintiff, he expressly acknowledged the defendant's testimony regarding these facts without disputing them. Barta also acknowledged that the plaintiff had not discovered that the court lacked jurisdiction over the defendant until after it had attached his property in December, 2002, because

---

[18] The parties agree that the plaintiff could not have served the defendant at the Rocky Hill address, which was identified as his residence in the guaranty agreement, because it knew that the defendant no longer lived there.

[19] The defendant did not indicate the exact date in June, 2002, that his wife left Connecticut.

it had relied on the incorrect court records and Benneche's letter to Gaide. Barta finally attested that, pursuant to the domestic mail manual, which is published by the United States Postal Service, certified and registered mail is forwarded without an additional charge to domestic addresses only.

We first set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 676–77, 923 A.2d 726 (2007).

"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Gould* v. *Mellick & Sexton*, 263 Conn. 140, 151, 819 A.2d 216 (2003). "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal

quotation marks omitted.) *Historic District Commission* v. *Hall*, supra, 282 Conn. 677.

The legal principles that guide our analysis are well established. General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." Under § 52-590, however, the limitation period may be tolled for up to seven years if the defendant lives outside the state. See footnote 17 of this opinion. "[The] statute, which can be traced to the [mid-1800s], preserve[s] the plaintiff's right of action during a period when, by reason of the defendant's absence, it was impossible to commence an action in personam against the defendant." (Internal quotation marks omitted.) *Venables* v. *Bell*, 941 F. Sup. 26, 27 (D. Conn. 1996), quoting *Dorus* v. *Lyon*, 92 Conn. 55, 57, 101 A. 490 (1917). An exception to this rule is when a nonresident defendant is amenable to suit under § 52-59b. General Statutes § 52-59b (a) provides in relevant part that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . . (1) [t]ransacts any business within the state . . . ." General Statutes § 52-59b (c) requires process to be served "by leaving with or at the office of the Secretary of the State, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at the defendant's last-known address, by registered or certified mail, postage prepaid, return receipt requested, a like true and attested copy with an endorsement thereon of the service upon the Secretary of the State."

In the present case, the defendant does not dispute that he was a Connecticut resident in 1991 and that his signing of the guaranty and suretyship agreement constituted a business transaction. Correspondingly, the plaintiff does not dispute that the defendant moved

to the United Arab Emirates on or about March 1, 2002, and that the applicable statute of limitations is six years under § 52-576 (a). The plaintiff nevertheless contends that service under the long arm statute was impossible because it was not aware that the defendant had left the country until after the writ of attachment had been served in December, 2002, and did not learn of the defendant's foreign address until his deposition was taken on April 14, 2006. The plaintiff further contends that the trial court's decision is devoid of any facts that would support the conclusion that the defendant was amenable to service of process because persons who, under the ordinary circumstances of the defendant's life, might have known that the defendant was in the United Arab Emirates actually had such knowledge. The plaintiff adds that there was a genuine issue of material fact as to the identity of the people who would have known where the defendant had moved in March, 2002. The plaintiff finally argues that, even if it had known the defendant's address, service of process via certified mail in the United Arab Emirates would have been futile because the United States Postal Service's domestic mail manual indicates that the postal service forwards or delivers certified mail only to domestic addresses.

The defendant responds that he was amenable to service of process because his wife had arranged to have his mail forwarded to the home of her uncle in Texas. The defendant also argues that the statute merely requires the posting of the mail to a defendant's last known address and that it does not matter whether the mail actually reaches the intended recipient. He thus contends that it is the reasonable probability that notice of service will be communicated to the nonresident defendant, rather than actual notice of service, that is the test. We conclude, on the basis of the record before us, that there is no genuine issue of material

fact as to whether the defendant was amenable to service under the long arm statute. Accordingly, the defendant is entitled to judgment as a matter of law.

In *Hartley* v. *Vitiello*, 113 Conn. 74, 154 A. 255 (1931), in which we considered whether a nonresident, who had been sued for allegedly causing a motor vehicle accident, had been properly served under the long arm statute, we stated that "it is reasonable probability of notice, not actual notice, which is the test. . . . The requirement that the copy be mailed to the defendant at his 'last-known address' does not mean the last address known to the plaintiff but does mean the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it. Unless the defendant has departed for parts unknown, it means his actual address; if he has disappeared it means his last address so far as it is reasonably possible to ascertain it. This address the plaintiff must learn at his peril and only if the copy is mailed to it is there a compliance with the statute. . . . Interpreted in the sense which the legislature intended, our statute, if complied with, will certainly bring about a reasonable probability of actual notice of the pendency of the action to the defendant." (Citations omitted.) Id., 80–81.

In the present case, Barta acknowledged in his affidavit that the plaintiff did not attempt to locate the defendant for the purpose of making service between March 1, 2002, the date on which the defendant left the country, and July 1, 2002, the date that the statute of limitations expired. The plaintiff suffered from the misapprehension—based in part on incorrect court records, the October, 1998 letter from Benneche to the plaintiff's attorney regarding pretrial matters and the plaintiff's own lack of diligence in examining the appearance form—that Benneche had made an appearance for the defendant on February 11, 1999. In fact, Barta conceded in his affidavit that the plaintiff did not seek to have

the defendant defaulted, move for a statutory continuance, or otherwise proceed against the defendant in a manner that would have revealed that Benneche might not be representing him, because it was unaware that there might be a jurisdictional issue. This misunderstanding became clear when the plaintiff incorrectly sent notice to Benneche in December, 2002, that it had attached the defendant's North Haven property.

The plaintiff now attempts to remedy the unfortunate consequences that followed by claiming that the statute of limitations was tolled because the defendant was not amenable to service. The record, however, indicates otherwise. As the defendant explained in his affidavit, his wife remained at the North Haven property between March 1, 2002, when he left for the United Arab Emirates, and late June, 2002. Thereafter, the defendant's mail was forwarded to the home of his wife's uncle in Texas. Because it would be reasonable to conclude that the defendant's wife and her uncle were persons who, under ordinary circumstances, would have been aware of the defendant's last known address, there was a reasonable probability that, if the plaintiff had sent notice to the North Haven address, the defendant's wife or her uncle would have communicated the defendant's address in the United Arab Emirates to the plaintiff or informed the defendant that notice had been sent. Indeed, the efficacy of such an approach was demonstrated when the plaintiff left a notice of attachment at the North Haven address less than six months later and the defendant's tenant informed the property manager, who ultimately informed the defendant in the United Arab Emirates and caused him to return to Connecticut. See, e.g., *Venables* v. *Bell*, supra, 941 F. Sup. 27 (applying Connecticut's long arm statute and concluding that "last known address" requirement had been satisfied when plaintiff, who lacked knowledge of defendant's whereabouts and was unable to locate him

despite diligent and persistent efforts, sent copy of summons and complaint by registered mail to missing person's spouse [internal quotation marks omitted]).

Furthermore, the plaintiff has failed to demonstrate that, if it had pursued the matter with diligence and discovered the defendant's actual address in the United Arab Emirates, notice sent by certified or registered mail would not have reached him. The plaintiff argues that the United States Postal Service's domestic mail manual provides that certified mail is deliverable only to domestic addresses. The plaintiff, however, misconstrues the manual, which merely provides that certified and registered mail will be forwarded *without additional charge* to domestic addresses only. Moreover, because the *domestic* mail manual does not govern the delivery of international mail, it sheds no light on whether certified or registered mail may be delivered to foreign addresses. Bare assertions, without evidentiary support, are insufficient to raise a genuine issue of material fact. See *Gould* v. *Mellick & Sexton*, supra, 263 Conn. 151. Accordingly, we conclude that, because the defendant was amenable to service under § 52-59b, the statute of limitations was not tolled by the defendant's absence from the country.

## II

The plaintiff next claims that the trial court, in granting the defendant's motion for summary judgment, improperly allowed the defendant to relitigate jurisdictional and service issues that the court previously had decided when it denied the motion to dismiss. The plaintiff claims that, although there is some authority for the proposition that the denial of a motion to dismiss based on lack of personal jurisdiction does not preclude the filing of a special defense that raises the same issue, the more recent and numerous Superior Court cases bar reassertion of such a claim as a special defense. In

addition, the rules of practice do not expressly provide that the court's lack of personal jurisdiction may be raised as a special defense. The defendant responds that the trial court did not deny the motion to dismiss on jurisdictional grounds but, rather, on the ground that the plaintiff's action was barred by the six year statute of limitations. The defendant also argues that the jurisdictional issue was not litigated in the trial court and that a statute of limitations defense is not the equivalent of a defense alleging the absence of personal jurisdiction. We agree with the defendant that the trial court's denial of the motion to dismiss did not preclude consideration of the jurisdictional issue in the context of the motion for summary judgment.

Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ." In the present case, the motion to dismiss was timely filed. The court, however, did not substantively address the jurisdictional issue when it denied the motion. It simply stated that the filing of the motion did not prevent it from considering the plaintiff's application for an order of notice, which it elected to address first. The court therefore took the unusual action of denying the motion "without prejudice," and ordered the parties to schedule an evidentiary hearing on the application. Denial of the motion "without prejudice" clearly signaled the court's willingness to consider the jurisdictional issue if and when the defendant decided to raise it again. The defendant did raise the issue again in his first special defense, filed on January 13, 2005, to the plaintiff's complaint, and in his motion for summary judgment filed on September 19, 2005. In the summary judgment motion, the defendant argued that the plaintiff's action had not been commenced within the six year statute

of limitations because the plaintiff's initial attempt at abode service in 1998 had not been successful and because the statute of limitations was not tolled when the defendant left the country. The court thus *was required* to consider whether valid service had been made on the defendant in October, 1998, before it could determine whether the action had been brought before the statute of limitations had expired. Accordingly, the plaintiff's claim is unpersuasive.

### III

The plaintiff finally claims that the trial court improperly granted the defendant's motion for summary judgment because the court had obtained personal and in rem jurisdiction over the defendant when the order of notice was issued on October 18, 2004. In light of our conclusion in part I of this opinion that the statute of limitations, which expired on July 1, 2002, was not tolled by the defendant's absence from the country, this claim is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.