WAGEEH S. AQLEH *v.* CADLEROCK JOINT VENTURE II, L.P.

CADLEROCK JOINT VENTURE II, L.P. *v.* MARIE C. MILAZZO ET AL.
(SC 18539)

Rogers, C. J., and Norcott, Katz, Palmer, McLachlan and Eveleigh, Js.

Argued September 10—officially released November 23, 2010

*David A. Lavenburg*, for the appellant in both cases (Cadlerock Joint Venture II, L.P.).

*Richard F. Connors*, for the appellee in both cases (Wageeh S. Aqleh).

*Opinion*

McLACHLAN, J. This joint appeal arises out of an action (original action) brought by Cadlerock Joint Venture II, L.P. (Cadlerock), to recover on a promissory note guaranteed by Wageeh S. Aqleh[1] and Cadlerock's prejudgment attachment of Aqleh's property in that action. Summary judgment was rendered in favor of Aqleh on the ground that Cadlerock had failed to timely commence the action against him. In a separate, subsequent action, Aqleh filed an application to discharge the attachment (subsequent action). Thereafter, Cadlerock filed a motion to cite in Aqleh as an additional defendant in the original action and a request for a temporary injunction prohibiting Aqleh from conveying or encumbering the attached property. The trial court denied

---

[1] Cadlerock is the plaintiff in the original action to recover on a commercial note, and is the defendant in a subsequent action brought to discharge an attachment. Aqleh, along with three other guarantors and the maker of the note, is a defendant in the original action and is the sole plaintiff in the subsequent action. For clarity, we refer to Cadlerock and Aqleh—the only parties involved in this joint appeal—by name, rather than by party status.

Cadlerock's motions to cite in Aqleh and for injunctive relief and granted Aqleh's application. Cadlerock now appeals from both judgments. The dispositive issue in both cases is whether a motion to cite in an additional defendant constitutes an "action" within the meaning of the accidental failure of suit statute, General Statutes § 52-592 (a).[2] We conclude that it does not, and, accordingly, we affirm the trial court's judgments.

In *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, 287 Conn. 379, 949 A.2d 450 (2008), we set forth the following relevant facts and procedural history. "On July 17, 1991, Michael Milazzo, president of Melina Enterprises, Inc. (Melina), executed a commercial note in favor of Connecticut Savings Bank (bank) in the principal amount of $175,000, payable in full, together with interest, on July 1, 1996. The note was guaranteed by seven individuals, including Michael Milazzo and [Aqleh]." Id., 381. Melina subsequently defaulted on the note, and on or about July 25, 1997, the bank assigned the note to Cadlerock. Id., 382. "In October, 1998, [Cadlerock] brought the [original] action [to collect on the matured note] against Melina, [Aqleh] and three other individual guarantors . . . ." Id. Cadlerock unsuccessfully attempted to serve Aqleh. Id., 382–89. On December 18, 2002, Cadlerock attached Aqleh's property, and, Aqleh, after receiving notice of the attachment in late 2002 or early 2003, raised two special defenses—that service had been ineffective and that Cadlerock had failed to commence the action within the six year statute of limitations for contract actions set by General Statutes § 52-576 (a).[3] Id., 383–86. The trial court, *Wiese, J.*, ren-

<hr>

[2] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."

[3] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues

dered summary judgment in favor of Aqleh on the ground that Cadlerock had failed to commence the action against him within the applicable statute of limitations due to defects in the service of process. Id., 386–87. We subsequently affirmed the trial court's judgment, concluding that Cadlerock had failed to serve Aqleh and that the applicable statute of limitations had expired. Id., 395.

Although this court had affirmed the judgment of the trial court in favor of Aqleh, Cadlerock did not release its attachment of Aqleh's property. Consequently, Aqleh commenced the separate, subsequent action against Cadlerock on August 26, 2008, requesting that the attachment be discharged. On September 15, 2008, Cadlerock attempted to rescue its claim against Aqleh and thus save its attachment of Aqleh's property by filing a motion to cite in Aqleh as an additional defendant in the original action. The trial court denied the motion on the grounds that: (1) the original action had not been "commenced" or "determin[ed]" within the meaning of § 52-592 (a); (2) the motion to cite in Aqleh as an additional defendant in the original action did not constitute a "new action," and was, in fact, an attempt to relitigate the same issue in the same action; and (3) the granting of Cadlerock's motion to cite in Aqleh would defeat the public policy behind the statute of limitations, which is to promote the finality of the litigation process. In the subsequent action, because the trial court found that Cadlerock no longer had a claim against Aqleh, it granted Aqleh's application to discharge the attachment. This joint appeal followed.[4]

. . . ." As we noted in *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, supra, 287 Conn. 386, 393, the statute of limitations accrued on July 1, 1996, and expired on July 1, 2002.

[4] Cadlerock appealed from the trial court's judgments to the Appellate Court, and we transferred the joint appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

Before we proceed to the merits of Cadlerock's claims, we address the threshold question of whether the rulings challenged in this joint appeal constitute final judgments. Cadlerock asserts that both of the rulings—the trial court's denial of its motion to cite in Aqleh as an additional defendant in the original action and the court's ruling granting Aqleh's application to discharge the attachment in the subsequent action—are interlocutory orders that are appealable final judgments pursuant to *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). We recognize that the court's denial of Cadlerock's motion to cite in Aqleh as an additional defendant in the original action is not, by itself, a final judgment. Nevertheless, because that decision is inextricably intertwined with the trial court's ruling granting the application to discharge the attachment, we conclude that the joint appeal is taken from appealable final judgments.

The sole claim before the trial court in the subsequent action was Aqleh's application seeking a discharge of the attachment that Cadlerock had obtained on Aqleh's property in the failed original action. Accordingly, because the court's ruling granting the application rendered judgment on the entire complaint, it was a final judgment and there is no question regarding the appealability of that ruling. See Practice Book § 61-2.[5]

Although we acknowledge that, generally, the denial of a motion to cite in an additional party is not an appealable interlocutory order; see e.g., *Guthrie* v. *Hartford National Bank & Trust Co.*, 146 Conn. 741,

---

[5] Practice Book § 61-2 provides in relevant part: "When judgment has been rendered on an entire complaint, counterclaim or cross complaint, whether by judgment on the granting of a motion to strike pursuant to Section 10-44, by dismissal pursuant to Section 10-30, by summary judgment pursuant to Section 17-44, *or otherwise*, such judgment shall constitute a final judgment. . . ." (Emphasis added.)

742, 156 A.2d 192 (1959); our conclusion that the court's ruling granting the discharge application constituted a final judgment renders it unnecessary for us to determine whether the trial court's denial of Cadlerock's motion to cite in Aqleh as a defendant in the original action constituted a final judgment for purposes of appeal. "[I]n some circumstances, the factual and legal issues raised by a legal argument, the appealability of which is doubtful, may be so 'inextricably intertwined' with another argument, the appealability of which is established that we should assume jurisdiction over both." *Clukey* v. *Sweeney*, 112 Conn. App. 534, 542, 963 A.2d 711 (2009); see also *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 29–30, 836 A.2d 1124 (2003) (unnecessary to address whether counts that were not brought pursuant to Connecticut Unfair Trade Practice Act [CUTPA] were appealable because they were "inextricably intertwined" with appealable CUTPA counts). The two rulings at issue in this joint appeal are inextricably intertwined. The validity of the attachment rests on the viability of Cadlerock's original action against Aqleh. Therefore, the trial court's denial of Cadlerock's motion to cite in Aqleh as an additional defendant cannot be separated from a consideration of the trial court's granting of Aqleh's application to discharge the attachment. Indeed, in its objection to the application to discharge the attachment, Cadlerock relied primarily on its motion to cite in Aqleh as an additional defendant in the original action, contending that if the motion to cite in were granted, then the attachment would be valid. Even if the denial of Cadlerock's motion to cite in Aqleh as an additional defendant were not a final judgment for purposes of appeal, we would deem Cadlerock's claim raising that issue in the other case reviewable. Thus, we conclude that both of the trial court's rulings are appealable.

## II

Cadlerock first claims that the trial court improperly denied its motion to cite in Aqleh as an additional defendant in the original action because a motion to cite in constitutes an "action" within the meaning of the accidental failure of suit statute, § 52-592 (a). Cadlerock contends that a motion to cite in is an action in and of itself and that the original action and the motion to cite in Aqleh are not the same actions. Aqleh argues that because a motion to cite in does not "commence a new action" within the meaning of § 52-592 (a), Cadlerock may not rely on § 52-592 (a) to cite in Aqleh to the original action. We hold that the trial court properly denied Cadlerock's motion because a motion to cite in an additional defendant is not an "action" within the meaning of § 52-592 (a).[6]

The question of whether a motion to cite in an additional defendant constitutes an "action" within the meaning of § 52-592 (a) presents a question of statutory interpretation, over which we exercise plenary review. *Ziotas* v. *Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) Id. Specifically, § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the mean-

---

[6] Cadlerock also argues that its original action was "commenced" before the expiration of the statute of limitations and within the meaning of § 52-592 (a) and that a defendant has no argument as of right in defense to a motion to cite in an additional defendant. Neither of these claims is persuasive.

ing of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Ziotas* v. *Reardon Law Firm, P.C.*, supra, 587.

As directed by § 1-2z, we begin with the text of § 52-592 (a), which provides in relevant part: "If any action, *commenced within the time limited by law*, has failed one or more times to be tried on its merits because of *insufficient service or return of the writ* . . . or because the action has been *dismissed for want of jurisdiction* . . . or if, in any such action after a *verdict* for the plaintiff, the *judgment* has been set aside, or if a *judgment* of nonsuit has been *rendered* or a *judgment* for the plaintiff *reversed*, the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." (Emphasis added.)

Although the term "action" is not defined by the statute, the statutory text makes clear that the term is employed in the traditional sense, to refer to a civil action commenced by service of process, not a motion filed within the action. Section 52-592 (a) begins by stating that it applies only to original actions "commenced within the time limited by law . . . ."[7] This

---

[7] Our analysis in *Rocco* v. *Garrison*, 268 Conn. 541, 549–53, 848 A.2d 352 (2004), exemplifies the connection between the meaning of the term "action" and the means by which an action is "commenced" within the context of the accidental failure of suit statute. In *Rocco*, the plaintiffs attempted to effect service of process on the defendant pursuant to rule 4 (d) (2) of the Federal Rules of Civil Procedure, which imposes a duty on a defendant who is subject to service and who receives notice of an action in the manner prescribed in the rule to comply with a request to waive formal service. Id., 545–46. The plaintiffs sent to the defendant notice of an action in accordance with rule 4 (d) (2), and the defendant received the papers four days before

phrase includes two helpful terms that inform our analysis. First, an "action" is something that is "commenced." "Commence" is defined as "[t]o initiate by performing the first act or step. To begin, institute or start." Black's Law Dictionary (6th Ed. 1990); see General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly"). An "action," as used in § 52-592 (a), then, is a beginning; it is the start of the entire process. That idea is consistent with our traditional understanding of a civil action. No one is said to "commence" a motion. Second, an action is commenced "within the time limited by law . . . ." General Statutes § 52-592 (a). That phrase is commonly used to refer to a statute of limitations, a fixed period after the occurrence of the events that gave rise to the underlying cause of action. While a motion must be filed timely, an action must be commenced "within the time limited by law," meaning it must be brought within the applicable statute of limitations. A motion needs only to meet the deadline provided by the court or the rules of practice, *following* the commencement of the underlying action. The phrase therefore indicates that a motion to cite in is not an "action" for purposes of § 52-592 (a).

Section 52-592 (a) applies to an original action that "has failed . . . because of insufficient service or return of the writ . . . ." A writ accompanies a sum-

the expiration of the applicable statute of limitations, but did not sign and return the waiver. Id., 546. The statute of limitations lapsed before the plaintiffs effected formal service of process. Id. We noted that "[i]n Connecticut, an action is commenced when the writ, summons and complaint have been served upon the defendant"; id., 552; and held that, although the original action was not commenced in a timely manner under the applicable statute of limitations due to insufficient service of process, it nevertheless commenced for purposes of the accidental failure of suit statute. Id., 552–53.

mons and complaint, not a motion. General Statutes § 52-45a.[8] Furthermore, § 52-592 (a) refers to outcomes traditionally associated with the resolution of an action, not the disposition of a motion: "in any such action after a *verdict*," "*judgment* has been set aside," "*rendered* or . . . *reversed* . . . ." (Emphasis added.) All of these terms make clear that the term "action" in § 52-592 (a) does not include motions, because verdicts and judgments dispose of an action, not a motion. Judges merely rule on motions. While a party may move for a directed verdict or file a motion for summary judgment, a court rules on such motions and then renders an underlying judgment. Section 52-592 (d) expressly provides that it applies only to one type of pleading other than a new action—a cross complaint filed by any defendant in the action. If the legislature had intended § 52-592 (a) similarly to apply to a motion to cite in an additional party, it easily could have provided so expressly, and the fact that it did not is strong evidence that it did not so intend. See, e.g., *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010); *Barton* v. *Bristol*, 291 Conn. 84, 100–101, 967 A.2d 482 (2009).

Our analysis of related statutes confirms our conclusion that § 52-592 (a) plainly and unambiguously does not include a motion to cite in a party as an action. Specifically, many of the civil action statutes refer to actions and motions as separate and distinct happenings, with the motion occurring during or as part of the action. General Statutes § 52-197 (a), for example,

---

[8] General Statutes § 52-45a provides: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the Superior Court or a judge or clerk of the court to which it is returnable."

provides in relevant part that "[i]n any civil action, the court, upon motion of either party, may order disclosure of facts," indicating the legislature's clear intent that a motion for disclosure occurs *in* or during a civil action, and is not a civil action in itself. See also General Statutes § 52-85 ("[w]hen, in an action commenced . . . by process of . . . garnishment, the defendant does not appear . . . the court may . . . upon motion of any garnishee in the action, assign the action for trial"); General Statutes § 52-210 ("[i]f . . . in a civil action, the plaintiff has . . . rested his cause, the defendant may move for judgment as in case of nonsuit, and the court may grant such motion"); General Statutes § 52-228b ("[n]o verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action"); General Statutes § 52-250 ("[i]n any action in which a motion for the dissolution of a temporary injunction is heard before any judge when the court is not in session, the judge shall be entitled to be paid a reasonable sum"); General Statutes § 52-278m ("[w]henever a prejudgment remedy is sought . . . against a party who has previously filed a general appearance in such action, personal service . . . shall not be required, unless ordered by the court, but any such . . . order may be served in the same manner as any motion in such action"). It is difficult to reconcile the legislature's practice, in these many procedural statutes, of expressing assumptions that a motion occurs within or is part of an action and that an action and a motion are distinguishable, with the proposition that an "action" as used in § 52-592 (a) includes a motion to cite in an additional defendant. The plain meaning of the language of § 52-592 (a), therefore, clearly and unambiguously indicates that the legislature did not intend the accidental failure of suit statute to allow a motion to cite in to constitute an "action."

This conclusion is confirmed by reference to Practice Book § 11-2, which defines " 'motion' " as "any applica-

tion to the court for an order, which application is to be acted upon by the court or any judge thereof . . . ." Moreover, a motion to cite in or add new parties merely brings them into a case; it does not provide a separate basis for a judgment for or against new parties. *Woods v. Lavitt*, 110 Conn. 668, 669, 149 A. 392 (1930). For that to occur, the complaint must be amended to allege a cause of action for or against them. Id. As one court concisely has stated, "the office of a motion is not to initiate new litigation, but to bring before the court for some ruling some material but incidental matter arising in the progress of the case in which the motion is filed." *State* v. *McNerny*, 239 Neb. 887, 890, 479 N.W.2d 454 (1992); see also *Donald J.* v. *Evna M.*, 81 Cal. App. 3d 929, 934, 147 Cal. Rptr. 15 (1978) ("A motion is not an independent right or remedy; it is confined to incidental matters in the progress of a cause. A motion relates to some question that is collateral to the main object of the action and is connected with and dependent upon the principal remedy."); 56 Am. Jur. 2d 6, Motions, Rules, and Orders § 1 (2010) ("[t]he purpose of a motion is not to initiate new litigation, but to bring a material but incidental matter which arises during the course of a case before the court for a ruling").

A motion to cite in an additional defendant is no more than an application requesting a court to make a specific order to expand the scope of existing litigation. In other words, it is simply a proposal to enlarge the pool of potentially liable parties in a current, ongoing matter before the court. In these circumstances, it is evident that a request to increase the number of parties from whom a plaintiff may receive compensation does not convert a mere filing of a motion into an "action" within the meaning of § 52-592 (a). Moreover, the nature of the motion itself presumes that it is filed within an already existing action. A motion to cite in an *additional* defendant presumes that there already is at least

one defendant, and, therefore, that the action already has commenced. Lastly, it defies logic to argue that the accidental failure of suit statute can be used in the *same action* to revive a claim that has been lost because the statute of limitations has expired. *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, supra, 287 Conn. 395.

On the basis of the plain language of § 52-592 (a), we hold that a motion to cite in does not constitute an action for purposes of § 52-592 (a). Accordingly, we conclude that Cadlerock's motion to cite in Aqleh as an additional defendant in the original action did not constitute a "new" and separate "action" within the meaning of § 52-592 (a), and that the trial court properly denied Cadlerock's motion to cite in Aqleh.

### III

Cadlerock also asserts that the trial court improperly denied its request in the original action for a temporary injunction prohibiting Aqleh from conveying or further encumbering the property and, in the subsequent action, improperly granted Aqleh's application to discharge the attachment on his property. We disagree.

The standard for granting a temporary injunction is well settled. "In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law." *Moore* v. *Ganim*, 233 Conn. 557, 569 n.25, 660 A.2d 742 (1995). A party seeking injunctive relief must demonstrate that: (1) it has no adequate remedy at law; (2) it will suffer irreparable harm without an injunction; (3) it will likely prevail on the merits; and (4) the balance of equities tips in its favor. *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 446, 645 A.2d 978 (1994). "The plaintiff seeking injunctive relief

bears the burden of proving facts which will establish irreparable harm as a result of that violation." *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 401, 426 A.2d 784 (1980). Moreover, "[t]he extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." Id., 402.

As we already have explained in *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, supra, 287 Conn. 395, Cadlerock failed to serve Aqleh within the statute of limitations despite the fact that he was amenable to service, and the statute of limitations was not tolled by Aqleh's absence from the country. Additionally, as we have set forth in this opinion, Cadlerock may not rely on the accidental failure of suit statute to save the action as against Aqleh because Cadlerock's motion to cite in Aqleh does not constitute a "new" or separate action pursuant to § 52-592 (a). Accordingly, when the trial court denied Cadlerock's motion to cite in, there was no action pending against Aqleh. Thus, Cadlerock was left without likelihood of success on the merits and the trial court properly denied Cadlerock's request for a temporary injunction. For the same reason, the court also properly granted Aqleh's application to discharge the attachment.

The judgments are affirmed.

In this opinion the other justices concurred.