******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL MATTHEWS ET AL.
*v.* SBA, INC., ET AL.
(AC 34673)

Sheldon, Keller and Harper, Js.

*Argued September 11, 2013—officially released April 22, 2014*

(Appeal from Superior Court, judicial district of Waterbury, Complex Litigation Docket, Shaban, J.)

*Justin R. Clark*, with whom, on the brief, was *Wendell G. Davis*, *Jr.*, for the appellants (plaintiffs).

*John F. Farraher*, *Jr.*, pro hac vice, with whom were *David B. Zabel* and, on the brief, *Barbara M. Schellenberg*, for the appellees (named defendant et al.).

*Daniel J. Finnegan*, for the appellee (defendant James H. Ross).

*Michael D. Blanchard*, with whom was *Christopher M. Wasil*, for the appellees (defendant Village Ventures, Inc., et al.).

*Opinion*

KELLER, J. The plaintiffs, Michael Matthews and Stephen Kotfila, appeal from the judgment of the trial court granting the defendants' motions to dismiss. The plaintiffs, Massachusetts residents, brought the underlying action against twenty-one defendants seeking damages sounding in a number of legal theories for the alleged dilution of their stock ownership interests in the early stages of a wireless telecommunications company called Optasite, Inc. (New Optasite).[1] The twenty-one defendants,[2] all of which are foreign business entities and nonresident individuals, are, for the purpose of clarity, best organized into four categories: (1) the SBA defendants; (2) the Investment Company defendants; (3) the Employee defendants; and (4) James H. Ross. In total, three motions to dismiss were filed: one on behalf of the SBA defendants; one on behalf of the Investment Company defendants and Employee defendants; and one on behalf of Ross. The court granted the motions to dismiss on various grounds as to each defendant and thereupon rendered judgment in favor of the defendants, from which the plaintiffs appealed. The plaintiffs claim that the court improperly granted the defendants' motions to dismiss because it erred in finding that (1) there was insufficient service of process pursuant to General Statutes §§ 52-59b (c), 34-225 (b), and 33-929 (b); (2) it lacked personal jurisdiction under the applicable long arm provisions, General Statutes §§ 52-59b (a) and 33-929 (f), and as a violation of constitutional due process; and (3) venue was improper pursuant to General Statutes § 51-345. We affirm the judgment of the court.

## I

## BACKGROUND

This case arises out of underlying events in which the plaintiffs allege they were injured by misrepresentations and other misconduct that occurred in connection with the merger of two companies in which they held stock, Pinnacle Site Development, Inc., and Optasite, Inc. On September 20, 2011, the plaintiffs filed a fifteen-count[3] complaint on the basis of a common set of factual allegations to recover damages from the four groups of defendants: the SBA defendants, the Investment Company defendants, the Employee defendants, and Ross. At all times relevant to the allegations of the complaint, as well as at the time this action commenced, the plaintiffs were residents of Massachusetts. They are also the sole members of four Connecticut limited liability companies, each of which maintains a business address in Massachusetts.[4]

The court's memorandum of decision adequately sets forth the undisputed facts contained in the complaint and the parties' affidavits in support of and in opposition to the motions to dismiss. "In the 1990s, the plaintiffs

were affiliated with a company named Berkshire Wireless Incorporated (BWI). Some assets of BWI were purchased by a newly formed company named Optasite, of which the plaintiffs were founding members and shareholders. At that time, Optasite was a Massachusetts company with a principal place of business in Glastonbury, Connecticut. Village Ventures, Inc., and Worcester Venture Fund, L.P., were early stage, minority interest investors in Optasite. Both plaintiffs left Optasite in 2001 to take positions at a company named Pinnacle Site Development, Inc. (Pinnacle), a Connecticut corporation doing business in Glastonbury, Connecticut.

"In August of 2002, Optasite agreed to merge with Pinnacle, the latter being the surviving company (New Pinnacle). New Pinnacle was, itself, incorporated in Delaware with its principal place of business in Glastonbury, Connecticut. Negotiations over the merger, which included telephone calls and in-person meetings by all parties involved, were done substantially in Glastonbury, Connecticut. The merger was closed on September 5, 2002, in New York, New York, and Matthews became chief executive officer of New Pinnacle. The plaintiffs allege that all the defendants represented to the plaintiffs that their fully vested interest in New Pinnacle was and would always be on equal footing with that of other shareholders. In the beginning of 2003, New Pinnacle was renamed Optasite, Inc. (New Optasite).

"In accordance with New Optasite's business model, the plaintiffs thereafter brought business deals to the company and otherwise tried to advance the company's interests. Despite this, the defendants thereafter criticized the plaintiffs and otherwise frustrated their attempts to act upon the business model. All the defendants brought concerns in general in regard to both the business model and New Optasite that ran counter to repeated representations made to the plaintiffs during the merger and formation of New Optasite. The defendants attempted to force the plaintiffs from New Optasite so a new management team could be brought in. In doing so, they concealed from the plaintiffs material facts, conditions, and circumstances regarding New Optasite and conspired to create an environment in which [the plaintiffs] would leave New Optasite and forfeit their interest in the company. More specifically, the defendants unreasonably rejected business deals brought by the plaintiffs only to accept the same deals after the plaintiffs were forced out of New Optasite.

"Despite the plaintiffs' efforts, New Optasite claimed poor performance on their part and sought their resignation. Although denying the claim of poor performance, given his frustration with the situation, Matthews resigned as chief executive officer on or about April 30, 2003. In connection with his resignation, Matthews

and New Optasite executed a separation contract that, among other things, bound New Optasite to limit its response to third party requests for information concerning Matthews. This contract was drafted and executed in Connecticut. In June, 2003, Kotfila also resigned from New Optasite. In further reliance on representations allegedly made by all of the defendants, Matthews failed to exercise stock options that he had in New Optasite and which expired at the end of August, 2003. After the expiration of the stock options, the board of directors of New Optasite represented to the plaintiffs, who were still shareholders, that it had a new plan for reorganization of New Optasite. The board of directors noted that the reorganization would dilute the plaintiffs' shares but nonetheless assured the plaintiffs that the future benefit of the diluted shares would far outweigh the initial loss. Allegedly, all the defendants and the board of directors knew or should have known that this representation was false and that the dilution was for their own benefit. The effect of the alleged misrepresentation was to 'wash out' the plaintiffs' shares and interest in New Optasite and caused them to suffer losses and other financial injury. According to the plaintiffs, the defendants had conspired to make these false representations and injure the plaintiffs' monetary and professional interests, and [the alleged conspiracy] was predominately effectuated in Glastonbury, Connecticut, during this time.

"In 2004, New Optasite resumed being headquartered in Massachusetts. The defendants Sean M. Marsh . . . and Word D. Peake III . . . attended board meetings in both Glastonbury, Connecticut, and Worcester, Massachusetts. In April of 2004, [the defendant] Point Judith Capital Partners, LLC, caused the fund for which it served as general partner to make its first investment in New Optasite.

"In 2006, well after the plaintiffs had left New Optasite, Ross, then chief executive officer of New Optasite, served as an expert against Matthews in a Massachusetts court case that involved the valuation of various business interests. There, detrimental to Matthews' claims, he placed the value of a Colorado company at far less than what Matthews had placed it at. In his role in the court case, Ross attended meetings, reviewed documents, and wrote a report with his findings. All of these actions took place in Massachusetts. Ross was not asked to testify either at a deposition or at trial with respect to the matter. The plaintiffs allege that these acts by New Optasite and Ross breached the terms of the separation contract signed in 2003 between New Optasite and Matthews.

"Later in 2006, New Optasite was reorganized into a holding company named Optasite Holding Company, Inc. In 2008, the company was acquired by and became part of [the defendant] SBA Communications Corpora-

tion." (Footnote omitted.)

Service of a copy of the writ of summons and complaint was attempted or made upon twenty of the defendants on or about September 13, 2011.[5] Pursuant to Practice Book §§ 10-30 and 10-31 (a), on November 3, 2011, the SBA defendants, on their own behalf, and the Investment Company defendants, on behalf of themselves and the Employee defendants, each filed a motion to dismiss the complaint. As grounds for their motions, the defendants asserted (1) insufficient service of process under §§ 52-59b, 34-225, and 33-929; (2) lack of personal jurisdiction for failure to satisfy the requirements of our applicable long arm statutes, § 52-59b (a) and § 33-929 (f), and as a violation of constitutional principles of due process; and (3) improper venue pursuant to § 51-345.

In support of their motion to dismiss, the SBA defendants submitted an affidavit by Thomas P. Hunt, general counsel for SBA Communications Corporation. In his affidavit, Hunt detailed the histories of the SBA defendants. He averred, inter alia, that SBA Communications Corporation is incorporated and has its principal place of business in Florida, "has no contacts" with Connecticut, is not registered to transact business in Connecticut, does not transact business in Connecticut, and does not have any offices, employees, or real or personal property in Connecticut.

Three additional affidavits were submitted in support of the motion to dismiss the claims against the Investment Company defendants: Marsh submitted an affidavit on behalf of Point Judith Capital Partners, LLC and related entities; Matthew C. Harris submitted an affidavit on behalf of Village Ventures, Inc., and related entities; and Peake submitted an affidavit on behalf of Worcester Venture Fund, L.P., Worcester Capital Partners, LLC, and related entities. Also, Marsh, Harris, and Peake each submitted an affidavit in support of the motion to dismiss the claims brought against them in their individual capacities. The affidavits in support of the Investment Company and Employee defendants' motion to dismiss set forth the histories of the business entities and the Employee defendants' connections to those entities, and disavowed any contacts with Connecticut that would be sufficient to establish jurisdiction.

Ross also appeared and filed a motion to dismiss on the basis of (1) lack of personal jurisdiction under the long arm statute applicable to nonresident individuals, § 52-59b (a), and as a violation of constitutional due process; (2) improper venue pursuant to § 51-345; and (3) lack of subject matter jurisdiction.[6] Ross, too, submitted an affidavit in support of his motion to dismiss. He averred, inter alia, that he did not become president and chief operating officer of New Optasite until after the plaintiffs had left the company, that he never had

been a party to a contract with or attended a meeting with either plaintiff, and that he had never had a discussion with either plaintiff concerning their interests in New Optasite. Ross further averred that he engaged in no activity in Connecticut related to the valuation of the Colorado telecommunications company and its assets. All activity associated with the valuation occurred in Massachusetts.

Thereafter, the plaintiffs filed memoranda of law in opposition to the three motions to dismiss. Pursuant to Practice Book § 10-31 (b),[7] Matthews and Kotfila both provided the court with counteraffidavits, effectively reiterating the allegations made in the complaint. After a hearing, the court granted the motions to dismiss and dismissed the claims against the twenty-one defendants on different grounds as to each defendant.

The court found that ten of the defendants either never had existed (nonexistent defendants) or had ceased to exist by virtue of merging into successor entities prior to service of the complaint (merged defendants). Accordingly, the court, sua sponte, dismissed the claims against the five nonexistent defendants that it had identified: SBA Infrastructure Holdings, Inc.; Optasite Holdings, LLC; Village Ventures; Worcester Capital Partners; and Point Judith.[8] The court also dismissed the claims against five merged defendants, having concluded that, upon merger, the entities had ceased to exist and therefore could not be served with process, and that the merged defendants' successors had not been named as defendants.[9] The five merged defendants are: SBA, Inc.; SBA Acquisition 2008-2, Inc.; SBA Infrastructure Holdings II, Inc., formerly known as Optasite, Inc.,[10] Optasite Tower Holdings, LLC; and Optasite Holding Company, Inc. At oral argument before this court, the plaintiffs' counsel conceded that the trial court could not exercise personal jurisdiction over the nonexistent defendants or the merged defendants. As such, the propriety of the court's dismissal of the claims against the ten aforementioned nonexistent defendants and merged defendants is not at issue on appeal.

Also, the court found that Village Ventures Securities Corporation, a Delaware corporation, was not in existence at the time the action against it commenced, as it had been dissolved in 2004. The court therefore concluded that it could not exercise jurisdiction over it and granted the motion to dismiss the claims against it on that ground. On appeal, the plaintiffs do not dispute the court's dismissal of the claims against Village Ventures Securities Corporation. As such, we need not address them further.

The court granted the following six defendants' motions to dismiss on the ground of insufficient service of process: (1) Harris; (2) Worcester Venture Fund, L.P.; (3) Worcester Capital Partners, LLC; (4) Point Judith Capital Partners, LLC; (5) Optasite Towers, LLC; and

(6) Village Venture Services, Inc. The court also dismissed the claims against the following ten defendants for lack of personal jurisdiction as a result of the plaintiffs' failure to satisfy the requirements of the applicable long arm statutes and as a violation of constitutional due process: (1) SBA Communications Corporation; (2) Optasite Towers, LLC; (3) Point Judith Capital Partners, LLC; (4) Worcester Venture Fund, L.P.; (5) Worcester Capital Partners, LLC; (6) Village Ventures Services, Inc.; (7) Marsh; (8) Harris; (9) Peake; and (10) Ross. Finally, the court found that pursuant to § 51-345, venue in Connecticut was improper with respect to "all" defendants and granted the defendants' motions to dismiss on that ground.

The plaintiffs first claim that the court erred by dismissing the claims against six defendants—Harris; Worcester Venture Fund, L.P.; Worcester Capital Partners, LLC; Point Judith Capital Partners, LLC; Optasite Towers, LLC; and Village Venture Services, Inc.—for improper service of process. Second, the plaintiffs claim that the court improperly granted the defendants' motions to dismiss for lack of personal jurisdiction under the applicable long arm provisions, § 52-59b (a) and General Statutes § 33-929 (f), and as a violation of constitutional due process. In the alternative, for the first time on appeal, the plaintiffs argue that the court committed plain error by failing to conclude, sua sponte, that § 33-929 (f)—which permits only a resident or a person having a usual place of business in this state to sue a foreign corporation in a Connecticut court— violates article first, § 10, of the constitution of Connecticut and the commerce clause of the United States constitution.[11] Third, the plaintiffs claim that the court erred in finding that venue in Connecticut was improper pursuant to § 51-345.[12] We are not persuaded by the plaintiffs' arguments, and, accordingly, affirm the decision of the court.

## II

### STANDARD OF REVIEW

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as

here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue[s] . . . ." (Citation omitted; internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516, 923 A.2d 638 (2007).

"If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Internal quotation marks omitted.) *Worth* v. *Commissioner of Transportation*, 135 Conn. App. 506, 516, 43 A.3d 199, cert. denied, 305 Conn. 919, 47 A.3d 389 (2012); see also *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 608, 674 A.2d 426 (1996) (noting that "this court has previously considered the undisputed factual allegations in the complaint as well as the undisputed factual allegations in the various affidavits when adjudicating the motion [to dismiss] where no evidentiary hearing has been held").

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 413–14, 35 A.3d 188 (2012). "If the defendant challenging the court's personal jurisdiction is a foreign corporation or a nonresident individual, it is the plaintiff's burden to prove the court's jurisdiction." *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 515. In this case, when the twenty-one defendants—all nonresident individuals and foreign business entities—contested personal jurisdiction, the plaintiffs assumed the burden of establishing jurisdiction. As an evidentiary hearing was neither requested nor held, we accept, as did the trial court, the undisputed allegations in the complaint, the affidavits submitted by the defendants, and the plaintiffs' counteraffidavits.

Mindful of the foregoing principles, we address the plaintiffs' claims in turn.

### III

### SERVICE OF PROCESS

We first address the plaintiffs' claim that the court incorrectly found that it lacked personal jurisdiction over defendants Harris; Worcester Venture Fund, L.P.; Worcester Capital Partners, LLC; Point Judith Capital Partners, LLC; Optasite Towers, LLC; and Village Venture Services, Inc., because service of process was not effected in compliance with the applicable statutes. We disagree with the plaintiffs.

"[T]he Superior Court . . . may exercise jurisdiction

over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) *Jimenez* v. *DeRosa*, 109 Conn. App. 332, 338, 951 A.2d 632 (2008). "[S]ervice of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of [personal] jurisdiction over that party." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 166–67, 884 A.2d 12 (2005). Therefore, "[p]roper service of process is not some mere technicality." *Hibner* v. *Bruening*, 78 Conn. App. 456, 458, 828 A.2d 150 (2003).

"[W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. . . . [A]n action commenced by such improper service must be dismissed." (Citation omitted; internal quotation marks omitted.) *Jimenez* v. *DeRosa*, supra, 109 Conn. App. 338. "Facts showing the service of process in time, form, and manner sufficient to satisfy the requirements of mandatory statutes . . . are essential to jurisdiction over the person." (Internal quotation marks omitted.) *Bowen* v. *Seery*, 99 Conn. App. 635, 637, 915 A.2d 335, cert. denied, 282 Conn. 906, 920 A.2d 308 (2007). There is a presumption of truth in matters asserted in the marshal's return of service. *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 515. Mindful of these overarching principles, we now turn to assessing the sufficiency of service as to each of the six defendants the court concluded were improperly served.

### A

### Harris

The plaintiffs argue that the court improperly concluded that it did not have jurisdiction over Harris, a Massachusetts resident, because service of process was not effected in compliance with § 52-59b (c), the long arm statute applicable to nonresident individuals, foreign partnerships, and foreign voluntary associations. We are not persuaded.

Section 52-59b (c) requires process to be served "by leaving with or at the office of the Secretary of the State, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at the defendant's last-known address, by registered or certified mail, postage prepaid, return receipt requested, a like true and attested copy with an endorsement thereon of the service upon the Secretary of the State. . . ." Noting that the address at which service was attempted was not Harris' actual address, and that "it is not clear what process the plaintiffs engaged in to ascertain [Harris'] last known

address," the court concluded that the plaintiffs had not served Harris at his last known address, as required by the statute. The plaintiffs contend that because they made a search for Harris' address which revealed that "there appear to be several addresses for Matthew Harris both before and after 2008," and because Harris received notice of the suit, they satisfied this last known address requirement and service of process was therefore proper under § 52-59b (c).

The following additional facts are relevant to our resolution of this claim. The marshal's return of service provides that on September 13, 2011, a true and attested copy of the original writ of summons and complaint was left with the secretary of the state and a copy thereof was sent to Harris at a residential address in Williamstown, Massachusetts, by certified, return receipt requested mail. Harris averred in his affidavit that although he had resided at the Williamstown address from 1998 to 2008, he has since worked and resided in New York. The plaintiffs state in their appellate brief that to determine Harris' address, they relied on Federal Election Commission records that indicate that "as late as May, 2009, Mr. Harris represented that he resided at the [Williamstown address]." Previously, at the hearing on the motion to dismiss, the plaintiffs' attorney stated in passing that they had "made searches on the Internet, Federal [Election] Commission records, [and] other records" to determine the addresses of the twenty-one defendants.

The marshal's supplemental return, dated September 26, 2011, reveals that the certified mail addressed to Harris was returned to the marshal and that the package was marked "FORWARD TIME EXPIRED, RETURN TO SENDER." The plaintiffs do not dispute that the Williamstown address was not Harris' actual address at the time of attempted service. Harris averred that he had not been personally served with process at his abode in connection with this litigation.

Our Supreme Court has stated with respect to the last known address requirement of § 52-59b (c): "The requirement that [process] be mailed to the defendant at his 'last-known address' does not mean the last address known to the plaintiff but does mean the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it. Unless the defendant has departed for parts unknown, it means his actual address; if he has disappeared it means his last address so far as it is reasonably possible to ascertain it. This address the plaintiff must learn at his peril and only if the copy is mailed to it is there a compliance with the statute. . . . Interpreted in the sense which the legislature intended, our statute, if complied with, will certainly bring about a reasonable probability of actual notice of the pendency of the action to the defendant." (Internal quotation marks

omitted.) *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, 287 Conn. 379, 393, 949 A.2d 450 (2008); see also *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 171, 455 A.2d 833 (1983) (holding that sending process to home of defendant's wife satisfied last known address requirement where defendant had fled for "parts unknown"). A plaintiff must use "diligent and persistent efforts"; *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, supra, 395; to determine the actual address of the defendant and unless a defendant has departed for "parts unknown," the plaintiff must learn the defendant's actual address "at his peril." (Internal quotation marks omitted.) Id., 393.

There is nothing in the plaintiffs' affidavits or the record, aside from the plaintiffs' attorney's passing statements at the hearing on the motions to dismiss and in the appellate brief, to indicate the nature or extent of the plaintiffs' search for Harris' actual address. They do not contend that Harris "departed for parts unknown." Indeed, the plaintiffs implicitly acknowledge that the Williamstown address was not the only one available to them. They state that "there appear to be several addresses for Matthew Harris both before and after 2008, and he was served at one of them." Although the plaintiffs relied on an address contained in Federal Election Commission records, these records were two years old at the time of attempted service in September, 2011, and merely revealed that Harris represented that he resided in Williamstown, Massachusetts, "as late as May, 2009 . . . ." Nothing in the record indicates that the plaintiffs attempted to serve Harris at any of these other purported addresses, either before or after process was returned to the marshal marked "RETURN TO SENDER." It was " 'at [their] peril' "; *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, supra, 287 Conn. 393; to determine Harris' actual address, and they failed to do so.

Given the record and the representations made to the court, the court correctly concluded that the plaintiffs had not sustained their burden of proving that they engaged in "diligent and persistent efforts" to determine the actual address of Harris.[13] Id., 395. We agree with the court that service of process upon Harris was not effected in compliance with § 52-59b (c) and that it therefore lacked jurisdiction over him. Accordingly, the court properly granted the motion to dismiss as to Harris.

### B

### Worcester Venture Fund, L.P.

As noted, § 52-59b (c) also governs service of process upon foreign partnerships and requires that the plaintiff leave process with the secretary of the state *and* send process to the defendant at its last known address. See part III A of this opinion. The court found that the

plaintiffs did not satisfy *either* of these two requirements: that is, they did not serve the secretary of the state *or* Worcester Venture Fund, L.P., a Delaware limited partnership with a principal place of business in Amherst, Massachusetts, at its last known address.

The "argument" portion of the plaintiffs' brief addressing the dismissal of the claims against Worcester Venture Fund, L.P., consists of four sentences and lacks a single citation to legal authority. The first sentence merely insists that the court erred in finding insufficient service of process. The second sentence summarizes the court's findings: that the plaintiffs failed to serve either Worcester Venture Fund, L.P., at its last known address or the secretary of the state. The plaintiffs then assert: "Here, the same arguments apply with respect to the plaintiffs' diligence in finding a last known address as apply [to their discussion of Harris]. The plaintiffs did make a search . . . and the defendant in question did receive notice of the pendency of the suit." (Citation omitted.) The plaintiffs offer no argument contesting the court's dismissal of the claims against Worcester Venture Fund, L.P., on the ground that service under § 52-59b (c) *requires* service upon the secretary of the state. The plaintiffs do not even contest the fact that they did not leave process with the secretary of the state in connection with Worcester Venture Fund, L.P.[14]

It is well established that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005).

Without analysis or discussion regarding the court's conclusion that service of process upon Worcester Venture Fund, L.P., was insufficient because the plaintiffs did not leave process with the secretary of the state, a mandatory requirement under § 52-59b (c), we cannot reverse the judgment of the trial court.[15]

C

Worcester Capital Partners, LLC, and

Point Judith Capital Partners, LLC

We together address the plaintiffs' claim that the court improperly dismissed the claims against Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC. The plaintiffs argue that the court improperly dismissed the claims brought against Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC, for insufficient service of process because of failure to satisfy the requirements of General Statutes § 34-225 (b),[16] the statute governing service of process upon foreign limited liability companies.

The following additional facts are relevant to our resolution of these claims. Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC, are both Delaware limited liability companies. The marshal's return of service indicates that a copy of the writ of summons and complaint was sent to Worcester Capital Partners, LLC, at its former place of business in Hadley, Massachusetts. Worcester Capital Partners, LLC, had vacated those premises in 2010 and relocated to Amherst, Massachusetts. Worcester Capital Partners, LLC, was never served at its Amherst address. Likewise, Point Judith Capital Partners, LLC, had a principal place of business in Boston, Massachusetts, at the time that service was attempted. The marshal's return of service, however, indicates that a copy of the writ of summons and complaint was instead mailed to Point Judith Capital Partners, LLC's former place of business in Providence, Rhode Island. Nothing in the record or the marshal's returns of service suggests that the secretary of the state was served in connection with Point Judith Capital Partners, LLC, or Worcester Capital Partners, LLC.

Section 34-225 (b) requires that service be made upon the foreign limited liability company's agent or, where one has not been appointed or cannot be located with reasonable diligence, upon the secretary of the state. General Statutes § 34-225 (b). Assessing the sufficiency of service under § 34-225 (b), the court concluded that "[t]here is no record or evidence that the plaintiffs have made service upon Worcester Capital Partners, LLC, or Point Judith Capital Partners, LLC, in accordance with the statute, or that they even served the defendants at the addresses they occupied at the time suit was commenced." Moreover, the plaintiffs do not dispute that the addresses at which they attempted to serve the defendants were incorrect, and they acknowledge that § 34-225 (b) governs service of process upon foreign limited liability companies. Instead, they assert that "the law recognizes that other methods of service of process may be a proper means to notify someone that there is a lawsuit against them," and that because the defendants received notice of the pendency of the action against them, service of process was therefore sufficient.

This court has previously held that "there is no exclusive means for service on a limited liability company," regardless of whether the limited liability company is domestic or foreign. *Little* v. *Mackeyboy Auto, LLC*, 142 Conn. App. 14, 20, 62 A.3d 1164 (2013). Section 34-225 (d) is explicit that the section does not exclude other methods of serving foreign limited liability companies, so long as the alternative method is otherwise authorized by law.[17] The plaintiffs, however, have not cited any statute authorizing service of process by the method they employed.[18] Nor have they provided the court with any basis to demonstrate that, despite a diligent search, they were not able to serve Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC, at their correct addresses.

Furthermore, we are unconvinced by the plaintiffs' argument that service of process was sufficient simply because Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC, received notice of the suit against them. As we have previously noted, "[p]roper service of process is not some mere technicality." *Hibner* v. *Bruening*, supra, 78 Conn. App. 458. Although the defendants received notice of the suit against them, "[m]ere notice of an action is not sufficient to confer personal jurisdiction over a nonresident defendant. . . . Such jurisdiction over a nonresident requires statutory authorization." (Citation omitted; internal quotation marks omitted.) *Cato* v. *Cato*, 27 Conn. App. 142, 144, 605 A.2d 558 (1992), aff'd, 226 Conn. 1, 626 A.2d 734 (1993). The plaintiffs, in this case, are correct that they were not necessarily required to serve Worcester Capital Partners, LLC, or Point Judith Capital Partners, LLC, in accordance with the procedures set forth in § 34-225, but in opposing the defendants' motion to dismiss, they were required to demonstrate that they served the defendants in a manner otherwise "permitted by law," which they have not done. See General Statutes § 34-225 (d).

We therefore conclude that the court did not err in granting the motion to dismiss the claims against Worcester Capital Partners, LLC, and Point Judith Capital Partners, LLC, for insufficient service of process.

D

Optasite Towers, LLC, and Village
Ventures Services, Inc.

We address together the plaintiffs' arguments that the court improperly dismissed the claims against Optasite Towers, LLC, and Village Ventures Services, Inc., for insufficient service of process.

The following undisputed facts, as found by the court, are necessary for the resolution of this issue. Village Ventures Services, Inc., changed its name to Village Ventures, Inc., on July 31, 2000, eleven years prior to the commencement of the underlying action. Service

of process, addressed to Village Ventures Services, Inc., was mailed to the business address of Village Ventures, Inc., in Williamstown, Massachusetts. Similarly, Optasite Towers, LLC, changed its name to SBA Infrastructure, LLC, on September 18, 2008, nearly three years prior to service of the complaint. SBA Infrastructure, LLC, is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. The marshal's return of service indicates that a copy of the original writ of summons and complaint, addressed to Optasite Towers, LLC, was sent by certified mail to the business address of SBA Infrastructure, LLC, in Boca Raton.

The court concluded that service of process was insufficient because neither Village Ventures, Inc., nor SBA Infrastructure, LLC, was named in the writ of summons or complaint. In dismissing the claims against Optasite Towers, LLC, and Village Ventures Services, Inc., the court relied on the well settled principle that "[t]he jurisdiction of the court is limited to those parties that have been expressly named in the action coming before it." See, e.g., *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 234, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000); *Delio* v. *Earth Garden Florist, Inc.*, 28 Conn. App. 73, 77, 609 A.2d 1057 (1992); *General Motors Acceptance Corp.* v. *Pumphrey*, 13 Conn. App. 223, 227–28, 535 A.2d 396 (1988). On appeal, the plaintiffs appear to argue that serving a business entity under its former name allows a court to exercise jurisdiction over the renamed entities—in this case, SBA Infrastructure, LLC, and Village Ventures, Inc. That is, the plaintiffs argue that where only the name of the company changes, but the entity undergoes no "substantive change," service under the entity's former name does not defeat service of process. The plaintiffs offer no legal support for this proposition. Nor do the plaintiffs state in their appellate briefs what statutory provision authorized the particular methods of service of process that they employed. Rather, they simply insist that because SBA Infrastructure, LLC, and Village Ventures, Inc., received notice of the suit against them, even if the writ of summons and complaint used their former names, service of process was proper.

We reiterate that we do not review claims that have been inadequately briefed and deem such claims to be abandoned. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . We do not reverse the judgment of a trial court on the basis

of challenges to its rulings that have not been adequately briefed." (Citations omitted; internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999). The plaintiffs' briefing as it pertains to the service of process for Optasite Towers, LLC, and Village Ventures Services, Inc., is wholly inadequate. The plaintiffs do not cite any legal authority in support of their argument that they may serve a defendant under a former name, and they provide no statutory basis under which this court may even assess whether the methods of service they used were otherwise proper.

As the plaintiffs' claims are inadequately briefed, we deem them to be abandoned. As such, we affirm the judgment of the court dismissing the claims against Optasite Towers, LLC, and Village Ventures Services, Inc., for insufficient service of process.

IV

PERSONAL JURISDICTION

We next turn to the plaintiffs' claim that the court improperly granted the motions to dismiss on the ground that it could not exercise personal jurisdiction over ten defendants: (1) SBA Communications Corporation; (2) Optasite Towers, LLC; (3) Point Judith Capital Partners, LLC; (4) Worcester Venture Fund, L.P.; (5) Worcester Capital Partners, LLC; (6) Village Ventures Services, Inc.; (7) Marsh; (8) Harris; (9) Peake; and (10) Ross. The plaintiffs' claim is twofold: first, the court has jurisdiction over these defendants under the applicable long arm statutes, § 52-59b (a) and § 33-929 (f); and second, the defendants have the constitutionally mandated minimum contacts with the state sufficient to permit the exercise of personal jurisdiction in accordance with the due process clause of the fourteenth amendment.

In analyzing personal jurisdiction, we are mindful of certain well settled principles. As we noted previously, once a defendant that is a foreign corporation or who is a nonresident individual challenges personal jurisdiction, the plaintiff bears the burden of presenting evidence sufficient to establish jurisdiction. *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 515. "When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process."[19] (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 606. "Only if we find the [long arm] statute to be applicable do we reach the question whether it would offend due

process to assert jurisdiction." *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983). Here, the trial court found that the plaintiffs had failed to prove that the requirements of our long arm statutes had been satisfied, and that exercising jurisdiction over the defendants would not comport with constitutional due process. We do not reach the plaintiffs' challenge to the court's conclusion that exercising jurisdiction would not comport with due process in view of our determination that the court correctly concluded in the alternative that it lacked jurisdiction over the defendants under the applicable long arm statutes.

For the purpose of clarity, we first address the court's long arm jurisdiction over the foreign limited liability companies (LLCs): Optasite Towers, LLC; Point Judith Capital Partners, LLC; and Worcester Capital Partners, LLC. We turn then to the court's long arm jurisdiction over the foreign partnership, Worcester Venture Fund, L.P., and the nonresident individuals: Marsh, Harris, Peake, and Ross. Finally, we discuss the court's long arm jurisdiction as it pertains to the foreign corporations, SBA Communications Corporation and Village Ventures Services, Inc. Ultimately, we are not persuaded by the plaintiffs' arguments and affirm the judgment of the court dismissing the claims against these ten defendants for lack of long arm jurisdiction.

A

Personal Jurisdiction Over Limited Liability Companies

The plaintiffs contest the court's determination that it could not exercise personal jurisdiction over the surviving foreign limited liability company defendants— Optasite Towers, LLC; Point Judith Capital Partners, LLC; and Worcester Capital Partners, LLC—pursuant to § 33-929 (f), the long arm provision that expressly applies only to foreign corporations. Because our review of the court's decision is plenary, we must resolve for the first time whether § 52-59b (a),[20] our general long arm provision, or § 33-929 (f),[21] our corporation specific long arm provision, governs the jurisdictional analysis of foreign limited liability companies.

Although the court apparently analyzed long arm jurisdiction over the foreign LLCs under our corporation specific long arm statute, § 33-929, we are convinced that our general long arm jurisdiction statute, § 52-59b, applies to foreign LLCs.[22] The court, in part, based its dismissal of the claims against the LLC defendants on the fact that the plaintiffs failed to satisfy the residency requirements of § 33-929 (f), and therefore could not sue a foreign business entity in Connecticut courts. See part IV B of this opinion. It also concluded that the plaintiffs' allegations were too conclusory, based on "group allegations" that were not particularized as to the individual defendants, and did not raise

any genuine issue of material fact that the individual defendants had engaged in any tortious conduct that could confer jurisdiction over them.

The question of which long arm statute applies arises because, although the Connecticut Limited Liability Company Act, General Statutes §§ 34-100 to 34-242, contains provisions pertaining to the registration of foreign LLCs in Connecticut; General Statutes § 34-223; and the service of process on foreign LLCs; General Statutes § 34-225; see part III C of this opinion; the legislature did not expressly specify how to treat foreign LLCs for the purposes of long arm jurisdiction. Additionally, our Supreme Court has not yet had occasion to decide whether § 52-59b (a) or § 33-929 (f) is the long arm provision that applies to foreign LLCs. There is a split of authority among our trial courts and the federal District Courts that have confronted this issue. We agree with the majority of the courts, and, adopting the well reasoned analysis of the United States District Court for the District of Connecticut in *Austen* v. *Catterton Partners V, LP*, 729 F. Supp. 2d 548, 553–60 (D. Conn. 2010), we hold that our general long arm jurisdiction provision, § 52-59b, rather than our corporation specific long arm provision, § 33-929, applies to foreign LLCs.[23]

In *Austen*, the court was tasked with determining whether Connecticut's long arm statutes authorized two nonresident plaintiffs to exercise long arm jurisdiction over a California LLC. Id., 551, 553. Observing that § 33-929 (f) applies only to "foreign corporations," whereas § 52-59b (a) applies expressly only to "nonresident individual[s], foreign partnership[s] or foreign voluntary association[s]," the court found that an LLC, a relatively new form of business organization, does "not fit easily into any of those categories," and thus determined that the statutes were ambiguous. (Internal quotation marks omitted.) Id., 557. After examining extratextual evidence, as authorized by General Statutes § 1-2z, the court concluded that § 52-59b (a) was the appropriate long arm statute to apply to foreign LLCs. Id., 557–59.

The court in *Austen* relied on three reasons in coming to this conclusion. "First, the structure of the Connecticut General Statutes provides persuasive evidence that § 52-59b (a), and not § 33-929 (e)-(f), is the long-arm jurisdiction statute applicable to foreign LLCs in Connecticut. Although § 52-59b (a) on its face is a statute with limited reach—to individuals, partnerships, and voluntary associations—it is codified in Title 52, which provides the general rules of civil procedure that apply in Connecticut courts. Section 33-929 (e)-(f), on the other hand, is codified in Title 33, which contains Connecticut's corporation law. The placement of § 52-59b (a) and § 33-929 (e)-(f) in the General Statutes suggests that § 52-59b (a) is the generally applicable long-arm jurisdiction statute that applies to all business organizations other than corporations. Furthermore, although

LLCs are neither corporations nor partnerships, Connecticut's Limited Liability Company Act is codified at Title 34, which also includes Connecticut's partnership law, rather than at Title 33, which consists of the corporation law. While the placement of the limited liability company laws in the General Statutes does not necessarily support classifying LLCs as partnerships, it does counsel against applying to LLCs a long-arm provision specific to corporations." (Emphasis omitted.) Id., 558.

Second, the court stated: "[C]onstruing § 52-59b (a) to apply to LLCs requires less violence to the text of the statute than construing § 33-929 (e)-(f) to apply to LLCs. . . . If the Court reads the term 'LLC' into the text of § 52-59b (a), all the other terms of the statute are equally applicable to individuals, partnerships, voluntary associations, and LLCs. The same is true of § 33-929 (f), but it is not quite true of § 33-929 (e). Under that subsection, a foreign corporation may be sued in Connecticut upon any cause of action arising from the corporation's transaction of business in Connecticut in violation of § 33-920. Section 33-920 is a provision that specifically requires foreign corporations to obtain a certificate of authority from the Secretary of the State before conducting business in Connecticut. Although there is an analogous provision requiring foreign LLCs to register with the Secretary of the State, see Conn. Gen. Stat. § 34-223, § 33-920 does not apply to LLCs, and §§ 33-920 and § 34-223 do not appear to be precisely coextensive. Thus, interpreting § 33-929 (e) to apply to foreign corporations and foreign LLCs to the same extent would require further significant textual alterations." (Citation omitted.) *Austen* v. *Catterton Partners V, LP*, supra, 729 F. Supp. 2d 558.

Finally, the court in *Austen* was persuaded that "absent a clear and definitive textual answer, and absent any conclusive extra-textual evidence of statutory meaning, the Supreme Court of Connecticut would interpret § 52-59b (a) and § 33-929 (e)-(f) in the manner most consistent with the . . . years of lower Connecticut court decisions interpreting the two statutes." Id., 558–59.[24] We agree with the court in *Austen* and are convinced that § 52-59b (a) was the provision under which the trial court should have assessed long arm jurisdiction over Optasite Towers, LLC, Point Judith Capital Partners, LLC, and Worcester Capital Partners, LLC. Although the court did not analyze the issue under § 52-59b (a), we nonetheless affirm the decision of the court dismissing the claims against these foreign LLCs for lack of long arm jurisdiction.

Having decided that § 52-59b (a) is the long arm statute applicable to foreign LLCs, we turn to the statute. Under § 52-59b (a), a foreign LLC is subject to personal jurisdiction in Connecticut if the LLC (1) transacts any business within the state, (2) commits a tortious act other than defamation within the state, (3) commits a

tortious act other than defamation outside the state that causes injury within the state, (4) owns, uses, or possesses real property in the state, or (5) uses a computer or computer network located in the state. The plaintiffs' only allegation is that Optasite Towers, LLC, Point Judith Capital Partners, LLC, and Worcester Capital Partners, LLC, engaged in tortious conduct in Connecticut that brings them within the ambit of § 52-59b (a) (2).

In dismissing the claims against the defendants, the court found that the plaintiffs did not allege with sufficient specificity in the complaint and affidavits that each individual defendant had engaged in tortious conduct. The court stated: "The plaintiffs' complaint and supporting affidavits house a number of group allegations. Notably, to the extent the complaint and supporting affidavits allege any tortious conduct on the part of any of the defendants, the plaintiffs allege that all defendants engaged in the tortious behavior. Group allegations such as these are not sufficient to establish personal jurisdiction over a specific defendant and cannot be relied upon to allege tortious conduct in the state." In reaching this conclusion, the court relied on *West Hartford* v. *Taubman Centers, Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket Nos. CV-07-5007876S, CV-07-5007877S (May 9, 2008) (*Eveleigh, J.*), which held, "group allegations that all defendants engaged in tortious conduct are not sufficient to establish long arm jurisdiction over a particular defendant. . . . Rather, plaintiffs must present jurisdictional facts as to each defendant." (Citation omitted.)

We agree with the court's reasoning and find that neither the complaint nor the plaintiffs' affidavits contain any specific factual allegations that Optasite Towers, LLC, Point Judith Capital Partners, LLC, or Worcester Capital Partners, LLC, engaged in any tortious conduct in this state sufficient to establish jurisdiction. The gravamen of the plaintiffs' claim is that the defendants "made misrepresentations or took actions that harmed the plaintiffs" in Connecticut. In support of this assertion, the plaintiffs claim that the complaint "alleges jurisdictional facts for each and every defendant." A review of the complaint and accompanying affidavits, however, suggests that the plaintiffs merely have made the same general allegations against broad categories of defendants—the "Investment Companies" and the "SBA defendants"—and have not specifically alleged any tortious conduct against Optasite Towers, LLC, Point Judith Capital Partners, LLC, or Worcester Capital Partners, LLC.

These generalized allegations are insufficient to establish jurisdiction, especially as the affidavits submitted in support of the defendants' motions to dismiss specifically refuted the claims against the individual

defendants. The defendants' affidavits indicate that neither Optasite Towers, LLC, Point Judith Capital Partners, LLC, nor Worcester Capital Partners, LLC, engaged in any of the acts enumerated in the long arm statute and deny committing any tortious acts in Connecticut. As previously noted, Hunt averred that Optasite Towers, LLC, had, in 2008, changed its name to SBA Infrastructure, LLC, which was not named a party to this action. Neither the complaint nor the plaintiffs' affidavits contain any particularized allegation against either Optasite Towers, LLC, or its successor, SBA Infrastructure, LLC. Moreover, Peake averred that Worcester Capital Partners, LLC, had never been a shareholder of New Optasite, and had merely been a general partner of Worcester Venture Fund, L.P. Meanwhile, Marsh averred that Point Judith Capital Partners, LLC, was a manager of entities that make investments and that none of those entities had invested in Optasite until April, 2004, after the complained of events occurred.

The plaintiffs' counteraffidavits do not refute those claims. Rather, they rely solely on the conclusory allegations contained in their complaint that the "Investment Companies" and "SBA defendants" engaged in tortious conduct, none of which is attributed to any individual defendant. As our Supreme Court has stated, "if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . [then] the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. *If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings.*" (Emphasis altered; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 347–48, 977 A.2d 636 (2009). In the present case, the plaintiffs' counteraffidavits fail to undermine the defendants' affidavits that conclusively establish that jurisdiction is lacking.

A plaintiff, in presenting facts sufficient to establish the court's jurisdiction, must present specific, and not simply conclusory, allegations. Cf. *Pitruzello* v. *Muro*, 70 Conn. App. 309, 317–18, 798 A.2d 469 (2002) (plaintiff's complaint and affidavit contained no specific factual allegations that defendant had engaged in tortious conduct or solicited business in Connecticut); *Olson* v. *Accessory Controls & Equipment Corp.*, 54 Conn. App. 506, 517, 735 A.2d 881 (1999) (plaintiff's testimony as to necessary jurisdictional facts was as conclusory as complaint's allegations), aff'd, 254 Conn. 145, 757 A.2d

14 (2000). Moreover, those allegations must allege jurisdictional facts sufficient to prove that the court had personal jurisdiction over a specific defendant. Having failed to establish this predicate, the plaintiffs have failed to prove that the court had jurisdiction over Optasite Towers, LLC, Point Judith Capital Partners, LLC, or Worcester Capital Partners, LLC.

## B

### Personal Jurisdiction Over Nonresident Individuals and Foreign Partnership

Section 52-59b (a) expressly governs long arm jurisdiction over nonresident individuals and foreign partnerships. As such, we discuss the court's dismissal of the claims against Marsh, Harris, Peake, Ross, and Worcester Venture Fund, L.P., together. The plaintiffs again claim that they alleged facts sufficient to establish that the aforementioned defendants committed tortious acts within the state of Connecticut.

As we have explained, under § 52-59b (a), a court possesses personal jurisdiction over nonresident individuals and foreign partnerships with respect to causes of action arising out of tortious conduct within the state. The crux of the plaintiffs' claim is that Marsh, Harris, and Peake—the "Individual Defendants"—and the "Investment Companies," including Worcester Venture Fund, L.P., collectively made fraudulent misrepresentations and committed tortious conduct which harmed the plaintiffs.

Relying on *West Hartford* v. *Taubman Centers, Inc.*, supra, Superior Court, Docket Nos. CV-07-5007876S, CV-07-5007877S, the court found that, "[b]etween the allegations of the complaint and supporting affidavits, the plaintiffs have only pled in generalities as to each and every defendant and have not alleged any particularized claims as to any of the Investment Company and Employee defendants that raise a question of material fact as to whether any tortious conduct occurred." We agree with the trial court that the plaintiffs' claims rest upon group allegations that fail to specify the tortious conduct in which any particular individual defendant engaged.

The plaintiffs rely on several allegations in their complaint and affidavits as proof that Marsh, Harris, and Peake, as a group, engaged in tortious conduct in this state. The plaintiffs averred that, in Connecticut, the "Individual Defendants . . . represented to the [plaintiffs] that [their] interest in New Optasite was and would always be pari passu with existing and future shareholders and/or investors in New Optasite and/or its successor and assigns knowing such representation to be false." (Emphasis omitted.) The only individualized claim as to any of the Employee defendants, however, came with respect to Marsh. In his affidavit, Matthews averred that in the spring of 2002, he "approached the

defendant Sean Marsh and the defendant Village Ventures regarding a proposed merger between Optasite and Pinnacle." As the court correctly observed, "it is not clear how this particularized assertion can form the basis of any tortious conduct."

Finally, with respect to Ross, the court stated: "The plaintiffs have not asserted that Ross was a party to the contract between Matthews and New Optasite or that Ross was even affiliated with the company at the time the contract was formed. As such, the complaint has failed to assert sufficient facts to establish a claim arising out of a contract with, or tortious conduct by, Ross." We agree. The complaint and the plaintiffs' affidavits are devoid of any allegation that Ross committed any tortious acts within Connecticut that would bring him within the ambit of the court's jurisdiction under § 52-59b (a) (2). Indeed, it is undisputed that all of the acts that allegedly gave rise to the plaintiffs' claims against Ross occurred in Massachusetts, where the valuation of the Colorado telecommunications company occurred. Moreover, the plaintiffs do not allege that Ross was a party to the contract alleged to have been breached or that he committed any tortious act outside the state that caused injury to any person or property within Connecticut. Even if we assume that the plaintiffs had alleged that Ross committed a tortious act, the complaint and affidavits are devoid of any allegation that that act caused injury "to a person or property within the state," a necessary claim for establishing jurisdiction pursuant to § 52-59b (a) (3). Indeed, the plaintiffs are both Massachusetts residents.

For these reasons, the plaintiffs failed to allege jurisdictional facts sufficient to prove that the court had personal jurisdiction over Harris, Marsh, Peake, Ross, or Worcester Venture Fund, L.P.

C

Personal Jurisdiction Over Foreign Corporations

We turn finally to the court's long arm jurisdiction over the foreign corporation defendants, SBA Communications Corporation and Village Ventures Services, Inc. The plaintiffs assert, as they did before the trial court, that § 33-929 (f) authorizes jurisdiction over these foreign corporations.[25] The court correctly ruled that because the plaintiffs are not residents of this state and do not have a usual place of business in Connecticut, they cannot use § 33-929 (f) to establish jurisdiction over SBA Communications Corporation, a Florida corporation with its principal place of business in Boca Raton, Florida, or Village Ventures Services, Inc., a Delaware corporation with its principal place of business in Amherst, Massachusetts.

The explicit language of § 33-929 (f) empowers only "a resident of this state" or a "person having a usual place of business in this state" to sue a foreign corpora-

tion in a Connecticut court. See *Wilkinson* v. *Boats Unlimited, Inc.*, 236 Conn. 78, 87, 670 A.2d 1296 (1996) (discussing § 33-411 [c], formerly § 33-929 [f]). Accordingly, the plaintiffs, Massachusetts residents, argue that they maintain a usual place of business in Connecticut. They offer four reasons in support of this assertion: (1) they formerly worked for companies that, at the time of the complained of actions, had their primary places of business in Connecticut; (2) the complained of actions occurred in Connecticut; (3) they are members of four Connecticut limited liability companies; and (4) they "regularly conduct business in Connecticut." The plaintiffs' argument is without merit, and because they have failed to demonstrate that they have a usual place of business in Connecticut, they cannot use § 33-929 (f) to establish long arm jurisdiction over SBA Communications Corporation or Village Ventures Services, Inc.[26]

The plaintiffs' first two bases for satisfying the residency requirement are irrelevant to establishing a usual place of business under § 33-929 (f). The plain language of the statute speaks to the time of the filing of the suit, rather than the time when the underlying events occurred, as the operative moment at which the "usual place of business" or residency requirement must be satisfied. That is, the statute states that a foreign corporation may be sued in our courts "by a person *having* a usual place of business in this state." (Emphasis added.) General Statutes § 33-929 (f). The statute does not open our courts to former residents or persons who, at some prior time, *had* a usual place of business in Connecticut, and the plaintiffs offer no support for this proposition.

The fact that the alleged tortious conduct by the defendants occurred in Connecticut is similarly unavailing to satisfy the residency requirements. Section § 33-929 (f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . out of tortious conduct in this state . . . ." The statute requires *both* that the tortious conduct occurred in this state, *and* that the plaintiffs fulfill the residency requirement. That the alleged tortious conduct occurred in this state does not by itself allow the plaintiffs to use § 33-929 (f) to subject SBA Communications Corporation or Village Ventures Services, Inc., to our long arm jurisdiction.

We are equally unpersuaded by the plaintiffs' contention that their membership in four Connecticut limited liability companies satisfies the usual place of business requirement. The plaintiffs brought this action in their individual capacities. The Connecticut limited liability companies of which they are members have no

discernible connection to this action, and the plaintiffs cannot use their membership as a bootstrap to establish jurisdiction. "A limited liability company is a distinct legal entity whose existence is separate from its members. . . . A limited liability company has the power to sue or be sued in its own name . . . or may be a party to an action through a suit brought in its name by a member." (Citations omitted.) *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008). The plaintiffs offer no law or authority in support of their argument that they may invoke their membership in Connecticut limited liability companies to satisfy personal "usual place of business" standards. We also note that even if the plaintiffs were permitted to invoke their membership in Connecticut LLCs to show that they maintain a usual place of business in this state, the record does not demonstrate that those LLCs have a usual place of business in Connecticut. To the contrary, the only relevant specific jurisdictional facts in the record are that the four limited liability companies have business addresses in Lee, Massachusetts.

In a further effort to establish that they have a usual place of business in Connecticut, the plaintiffs argue that they "regularly conduct business in the state." Particularly, the plaintiffs aver in their affidavits that they "have and continue to do business in the State of Connecticut . . . ." Whether such averments satisfy the residency requirement requires us, for the first time, to determine what constitutes a "usual place of business" within the meaning of § 33-929 (f). In order to evaluate the plaintiffs' claim, it is necessary for us to determine the contours of what is required to establish a "usual place of business." This requirement presents a question of statutory construction "over which this court exercises plenary review." *State* v. *LaFleur*, 307 Conn. 115, 125, 51 A.3d 1048 (2012). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legisla-

tive policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150–51, 12 A.3d 948 (2011).

As § 1-2z directs, we begin our analysis with the text of the statute. Noticeably, the text of the statute does not define the term "usual place of business." A wider search, moreover, reveals that the term is also not expressly defined elsewhere in the General Statutes. Our textual inquiry, however, does not end here. Accordingly, "we turn to General Statutes § 1-1 (a), which provides in relevant part: 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . .' We look to the dictionary definition of the [term] to ascertain [its] commonly approved meaning." *R.C. Equity Group, LLC* v. *Zoning Commission*, 285 Conn. 240, 254 n.17, 939 A.2d 1122 (2008); see also *Groton* v. *Mardie Lane Homes, LLC*, 286 Conn. 280, 288, 943 A.2d 449 (2008) ("[i]f a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary" [internal quotation marks omitted]).

We begin with the definition of "usual." Black's Law Dictionary (9th Ed. 2009) defines "usual" as "[o]rdinary [or] customary," or "[e]xpected based on previous experience, or on a pattern or course of conduct to date." "Place of business" is defined as "[a] location at which one carries on a business." Black's Law Dictionary, supra. In light of these definitions, we conclude that the statute is plain and unambiguous with respect to what constitutes a usual place of business. That is, as applied to the facts of this case, we do not see more than one likely or plausible meaning of the term "usual place of business." Under this dictionary based definition, it is clear that this state need not be the plaintiffs' primary or sole place of business, but it must, at the very least, be customary or expected that the plaintiffs conduct business here.

The plaintiffs have not satisfied their burden of alleging facts sufficient for the court to find that they have a usual place of business in Connecticut. See *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 515. The plaintiffs do not allege facts supporting their contention that they usually, customarily or ordinarily carry out business in this state. Instead, they merely aver that "have and continue to do business in the State of Connecticut . . . ." The plaintiffs did not provide the trial court with any other facts by which it could determine that they maintain a usual place of business in this state. Whether the extent of that business is sporadic, occasional or habitual cannot be determined by an

examination of the pleadings or the record. The complaint and affidavits are devoid of any allegations concerning the extent, nature or frequency of the business the plaintiffs purportedly conduct. Indeed, the plaintiffs do not even aver that Connecticut is their *usual* place of business, but merely a state in which they "continue to do business . . . ." By relying on a single, insufficient and conclusory averment, the plaintiffs have failed to provide the court with any information concerning what specific business they conduct in the state. Even if we take the facts in the light most favorable to the plaintiffs, Matthews and Kotfila have failed to meet their burden of demonstrating that either of them have a usual place of business in Connecticut. To the contrary, the only specific jurisdictional facts in the record are that the four limited liability companies have business addresses in Lee, Massachusetts, and that the company that employs the plaintiffs, Tower Acquisition, LLC, is a Delaware company with a business address in Massachusetts.

Again, "[i]f a challenge to the [trial] court's personal jurisdiction is raised by a defendant . . . the plaintiff must bear the burden of proving the court's jurisdiction." *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 607. The plaintiffs have not done so. We conclude, therefore, that the trial court properly dismissed the plaintiffs' complaint against SBA Communications Corporation and Village Ventures Services, Inc., on the ground that the plaintiffs did not satisfy the residency requirements of § 33-929 (f).

V

CONCLUSION

To summarize, the court properly dismissed the claims against the five nonexistent defendants that it identified: SBA Infrastructure Holdings, Inc.; Optasite Holdings, LLC; Village Ventures; Worcester Capital Partners; and Point Judith.

The court properly dismissed the claims against the five defendants that it found had ceased to exist by virtue of merger: SBA, Inc.; SBA Acquisition 2008-2, Inc.; SBA Infrastructure Holdings II, Inc.; Optasite Tower Holdings, LLC; and Optasite Holding Company, Inc.[27]

The court dismissed the claims against defendant Village Ventures Securities Corporation because it was not in existence at the time the action against it commenced. On appeal, the plaintiffs did not contest the propriety of the court's dismissal with respect to this defendant.

The court properly dismissed the claims against six of the defendants for insufficient service of process: Harris; Worcester Venture Fund, L.P.; Worcester Capital Partners, LLC; Point Judith Capital Partners, LLC; Optasite Towers, LLC; and Village Venture Services, Inc.

Finally, the court properly dismissed the claims against ten of the defendants for the plaintiffs' failure to satisfy the requirements of the applicable long arm statutes: SBA Communications Corporation; Optasite Towers, LLC; Point Judith Capital Partners, LLC; Worcester Venture Fund, L.P.; Worcester Capital Partners, LLC; Village Venture Services, Inc.; Marsh; Harris; Peake; and Ross.

For all of the above stated reasons, we conclude that the court properly granted the defendants' motions to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In its finding of facts, the court found that the official name of New Optasite is, in fact, Optasite, Inc. We must note, however, that the plaintiffs never identify in their complaint or supporting affidavits the actual corporate name of New Optasite. Nor do they otherwise allege which, if any, of the defendants is its successor.

[2] For the purposes of this appeal, we refer to the defendants as follows: The SBA defendants are: (1) SBA, Inc.; (2) SBA Infrastructure Holdings, Inc.; (3) SBA Infrastructure Holdings II, Inc., formerly known as Optasite, Inc.; (4) SBA Acquisition 2008-2, Inc.; (5) SBA Communications Corporation; (6) Optasite Holdings, LLC; (7) Optasite Towers, LLC; (8) Optasite Tower Holdings, LLC; and (9) Optasite Holding Company, Inc.

The Investment Company defendants are: (1) Point Judith; (2) Point Judith Capital Partners, LLC; (3) Worcester Capital Partners; (4) Worcester Capital Partners, LLC; (5) Worcester Venture Fund, L.P.; (6) Village Ventures; (7) Village Ventures Services, Inc.; and (8) Village Ventures Securities Corporation.

The Employee defendants are: (1) Sean M. Marsh; (2) Matthew C. Harris; and (3) Word D. Peake III. Marsh, a Massachusetts resident, was employed by Village Ventures, Inc., as regional managing director from 2000 to 2006. Since 2001, he has been a member of Point Judith Capital Partners, LLC. Harris is a resident of New York and has been employed by Village Ventures, Inc., since 2000. Peake, a Massachusetts resident, is a member of Long River Capital Management, LLC, which is the sole member of Worcester Capital Management, LLC, neither of which are parties to this action. Worcester Capital Management, LLC, manages Worcester Capital Partners, LLC, which, in turn, is the general partner of Worcester Venture Fund, L.P.

The fourth group of defendants consists solely of James H. Ross. Ross is a Massachusetts resident and has served as the president and chief operating officer of New Optasite since 2003.

[3] The complaint alleges: (1) breach of contract as to the SBA defendants and the Investment Company defendants; (2) breach of the covenant of good faith and fair dealing as to the SBA defendants and the Investment Company defendants; (3) unjust enrichment as to the SBA defendants and the Investment Company defendants; (4) breach of contract as to the Employee defendants; (5) breach of the covenant of good faith and fair dealing as to the Employee defendants; (6) unjust enrichment as to the Employee defendants; (7) breach of contract of separation as to the SBA defendants and Ross; (8) breach of fiduciary duty as to the SBA defendants and the Investment Company defendants; (9) fraudulent misrepresentation as to all defendants; (10) negligent misrepresentation as to all defendants; (11) tortious interference with contract as to the Investment Company defendants and the Employee defendants; (12) tortious interference with a business expectancy as to the Investment Company defendants, the Employee defendants, and Ross; (13) conversion as to the SBA defendants; (14) replevin as to the SBA defendants; and (15) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., as to the SBA defendants and Investment Company defendants.

[4] The plaintiffs' four limited liability companies are: (1) MKB Properties, LLC; (2) Western Summits, LLC; (3) Canyon Summits, LLC; and (4) Montana Summits, LLC. These limited liability companies are not plaintiffs and are not relevant to the allegations of the complaint. They are referenced by the plaintiffs solely as a basis for their claim that they satisfy the residency

requirements of the long arm provision of General Statutes § 33-929. See part IV C of this opinion.

[5] Although not noted by the court, we observe that of the twenty-one defendants, Optasite Holding Company, Inc., was not named in the summons despite being named as a defendant in the complaint. The record contains no indication that the plaintiffs served or attempted to serve process upon Optasite Holding Company, Inc. Generally, "[o]ne who is not served with process does not have the status of a party to the proceeding." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 165, 884 A.2d 12 (2005) (finding that state of Connecticut was not party to action where writ of summons named only defendant, motorist operating state owned ambulance, and record did not indicate service of process was made upon state). The plaintiffs' attorney, however, conceded at argument before this court that the trial court did not have personal jurisdiction over Optasite Holding Company, Inc., because, prior to commencement of this action, the entity had ceased to exist by virtue of merger and its successor had not been named a defendant. See footnote 9 of this opinion and accompanying text. Because the plaintiffs have conceded that the court did not have jurisdiction over Optasite Holding Company, Inc., we need not address further the issue concerning sufficiency of service of process on Optasite Holding Company, Inc.

[6] The court found that the plaintiffs' claims were within the court's subject matter jurisdiction and denied Ross' motion to dismiss on that ground. Ross has not appealed from that judgment.

[7] Practice Book (2012) § 10-31 (b), now § 10-31 (a), provides in relevant part: "Any adverse party who objects to [a motion to dismiss] shall, at least five days before the motion is to be considered on the short calendar, file and serve . . . a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record."

[8] Indeed, in apparent recognition that two of the defendants never had existed, the plaintiffs withdrew their claims against SBA Infrastructure Holdings, Inc., and Optasite Holdings, LLC, following the hearing on the motions.

[9] An entity absorbed in a merger ceases to exist and any of its remaining liabilities are assumed by the successor entity. Because the absorbed entity ceases to exist, it therefore cannot be sued. This proposition is true for both corporations and limited liability companies. See General Statutes (Rev. to 2011) § 33-820 (a) ("When a merger becomes effective . . . [2] [t]he separate existence of every corporation or other entity that is merged into the survivor ceases," and, "[3] [a]ll liabilities of each corporation or other entity that is merged into the survivor are vested in the survivor . . . ."); General Statutes (Rev. to 2011) § 34-197 ("[2] The separate existence of each limited liability company or other entity that is a party to the plan of merger or consolidation, except the survivor, shall cease. . . . [6] The survivor shall be responsible and liable for all liabilities and obligations of each of the limited liability companies or other entities that were merged or consolidated . . . .").

[10] We are obliged to note an inconsistency in the court's findings. In its memorandum of decision, the court found that SBA Infrastructure Holdings, Inc., both never had existed and had ceased to exist by virtue of merger. We recognize this to be nothing more than a typographical error and conclude that the court correctly found that SBA Infrastructure Holdings, Inc., never had existed, and intended to identify SBA Infrastructure Holdings II, Inc., as having ceased to exist by virtue of merger. This conclusion is amply supported by the record and the court's findings. In his affidavit, Hunt averred: "To the best of my knowledge and as reflected in the records of SBA Communications Corporation, there is not now and there has never been an entity named 'SBA Infrastructure Holdings, Inc.,' which is a named Defendant." Indeed, following the hearing on the motions to dismiss, the plaintiffs withdrew their claims against SBA Infrastructure Holdings, Inc. See footnote 8 of this opinion.

The court, however, also found that SBA Infrastructure Holdings II, Inc., ultimately had merged into an entity called SBA Infrastructure, LLC, which is not a party to this action. This finding is also supported by Hunt's undisputed averments. As such, we adhere to "[t]he prevailing rule . . . that scrivener's errors should generally be overlooked on review." (Internal quotation marks omitted.) *State* v. *Bothwell*, 78 Conn. App. 64, 77, 826 A.2d 182, cert. denied, 266 Conn. 908, 832 A.2d 72 (2003).

[11] The plaintiffs' plain error argument merits only brief discussion. "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that,

although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Citation omitted; internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 684–85, 31 A.3d 1012 (2011). This case does not present this type of extraordinary situation, as the alleged error can hardly be described as "obvious in the sense of not debatable." (Internal quotation marks omitted.) Id., 685. Given that our courts routinely apply the long arm provision of § 33-929 without considering or questioning its constitutionality, it is difficult to fathom why the court should have identified it, sua sponte, as a blatantly obvious and nondebatable violation of the Connecticut and United States constitutions.

Moreover, the case law suggests the opposite. The United States Court of Appeals for the Second Circuit has stated: "There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature." (Internal quotation marks omitted.) *Arrowsmith* v. *United Press International*, 320 F.2d 219, 222 (2d Cir. 1963); id., 232 n.19 (concluding that Vermont's long arm statute, which limited suits against foreign corporations to suits brought by its own residents, did not violate equal protection clause of fourteenth amendment or privileges and immunities clause of article four, § 2, of the United States constitution). Accordingly, given the lack of any obvious error, we decline to reverse the court's decision pursuant to the plain error doctrine.

[12] "When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 606, 674 A.2d 426 (1996). "It is axiomatic that courts do not engage in constitutional analysis if a nonconstitutional basis upon which to resolve an issue exists." *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 107, 890 A.2d 104 (2006). Because we conclude that the long arm statutes do not authorize the assertion of jurisdiction over the defendants, we do not reach the plaintiffs' argument that exercising jurisdiction over the defendants comports with constitutional due process. Likewise, because we conclude that the court properly granted the motions to dismiss for insufficient service of process and lack of long arm jurisdiction, we need not discuss the plaintiffs' claim that venue in Connecticut was proper.

[13] It is worth noting that our Superior Courts, which have addressed the last known address requirement far more frequently than our appellate courts, routinely require some foundation for establishing the extent and nature of the plaintiff's search. See *Dime Bank* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X05-CV-09-4017091S (January 15, 2010) (affidavit submitted by plaintiff's attorney describing steps taken to determine nonresident defendants' last known address did not support conclusion it was nonresident defendants' last known address); *Ross* v. *Castelano*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-02-0190247 (May 6, 2003) (concluding plaintiffs did not serve defendant at his last known address because they failed to file "any affidavits or any document" or "proof . . . of . . . investigation"); cf. *Updike, Kelly, & Spellacy, P.C.* v. *Beckett*, Superior Court, judicial district of Hartford, Docket No. X03-CV-04-97890S (March 6, 2002) (31 Conn. L. Rptr. 500) (affidavit submitted by employee of plaintiff describing reliance on address provided by defendant and prior use of that address for correspondence supported conclusion it was defendant's last known address), rev'd on other grounds, 269 Conn. 613, 850 A.2d 145 (2004). In this case, the plaintiffs did not provide the court with any such documentary support evincing the nature or extent of their search for Harris'—or any other defendant's—last known address.

[14] We confirm that nothing in the marshal's return or the record indicates that process was left with the secretary of the state, as required by § 52-59b (c).

[15] Even if the plaintiffs had left process with the secretary of the state, for the reasons set forth in part III A of this opinion, the plaintiffs did not satisfy their burden of proving that they served Worcester Venture Fund,

L.P., at its last known address.

[16] General Statutes § 34-225 (b) provides: "When the Secretary of the State and the Secretary of the State's successors in office have been appointed a foreign limited liability company's agent for service of process, the foreign limited liability company may be served by any proper officer or other person lawfully empowered to make service leaving two true and attested copies of such process together with the required fee at the office of the Secretary of the State or depositing the same in the United States mail, by registered or certified mail, postage prepaid, addressed to said office. The Secretary of the State shall file one copy of such process and keep a record of the date and hour of such receipt, and, within two business days after such service, forward by registered or certified mail the other copy of such process to the foreign limited liability company at the address of the office designated in the application for registration filed pursuant to section 34-223. Service so made shall be effective as of the date and hour received by the Secretary of the State as shown on the Secretary of the State's records. If it appears from the records of the Secretary of the State that such a foreign limited liability company has failed to appoint or maintain a statutory agent for service, or if it appears by affidavit attached to the process, notice or demand of the officer or other proper person directed to serve any process, notice or demand upon such a foreign limited liability company's statutory agent for service appearing on the records of the Secretary of the State that such agent cannot, with reasonable diligence, be found, service of such process, notice or demand on such foreign limited liability company may, when timely made, be made by such officer or other proper person by: (1) Leaving a true and attested copy thereof together with the required fee at the office of the Secretary of the State or depositing the same in the United States mail, by registered or certified mail, postage prepaid, addressed to said office, and (2) depositing in the United States mail, by registered or certified mail, postage prepaid, a true and attested copy thereof, together with a statement by such officer that service is being made pursuant to this section, addressed to such foreign limited liability company at the address of the office designated in the articles of organization in the state of formation as shown on the records of such state."

[17] General Statutes § 34-225 (d) provides: "Nothing contained in this section shall limit or affect the right to serve any process, notice or demand required or permitted by law to be served upon a limited liability company in any other manner permitted by law."

[18] At the hearing on the motions to dismiss, the plaintiffs referenced § 33-929 (b) as authorizing service upon the limited liability companies. This subsection, however, authorizes only a foreign *corporation* to be served by certified mail, not a foreign *limited liability company*.

[19] "The federal due process clause permits state courts to exercise [personal] jurisdiction over a nonresident corporate [or individual] defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. . . . A state court will have specific jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities . . . . Alternatively, [e]ven when the cause of action does not arise out of or relate to the foreign corporation's [or individual's] activities in the forum State, due process is not offended by a State's subjecting the corporation [or individual] to its [personal] jurisdiction if the defendant has had continuous and systematic general business contacts with the state." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 606 n.6.

[20] General Statutes § 52-59b (a) provides in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over *any nonresident individual, foreign partnership or foreign voluntary association* . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4)

owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state." (Emphasis added.)

[21] General Statutes § 33-929 (f) provides in relevant part: "Every *foreign corporation* shall be subject to suit in this state, *by a resident of this state or by a person having a usual place of business in this state*, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . ." (Emphasis added.)

[22] In their appellate brief, the SBA defendants agree with the trial court and argue that an LLC is to be treated as a corporation for the purposes of long arm jurisdiction and the court, therefore, was correct to assess jurisdiction under § 33-929 (f).

[23] Even if we assume, arguendo, that § 33-929 (f) applies to foreign limited liability companies, the plaintiffs still failed to meet their burden of establishing long arm jurisdiction over Optasite Towers, LLC, Point Judith Capital Partners, LLC, and Worcester Capital Partners, LLC. Section 33-929 (f) authorizes courts to exercise personal jurisdiction over a foreign corporation only where the plaintiff is "a resident of this state or . . . a person having a usual place of business in this state . . . ." The plaintiffs, Massachusetts residents, are neither residents of Connecticut nor do they have a usual place of business in the state and therefore cannot satisfy the statute's residency requirements. See part IV C of this opinion.

[24] A majority of courts have treated foreign LLCs as partnerships and, consequently, have applied § 52-59b for purposes of long arm jurisdiction. See, e.g., *Avant Capital Partners, LLC* v. *Strathmore Development Co. Michigan, LLC*, United States District Court, Docket No. 3:12-CV-1194 (VLB) (D. Conn. September 30, 2013); *Austen* v. *Catterton Partners V, LP*, supra, 729 F. Supp. 2d 548; *Lis* v. *Delvecchio*, United States District Court, Docket No. 3:11CV01057 (AWT) (D. Conn. August 13, 2012); *Screen Tech, Inc.* v. *Carolina Precision Plastics, LLC*, United States District Court, Docket No. 3:05cv975 (SRU) (D. Conn. January 25, 2006); *Pasquariello Electric Corp.* v. *Nyberg*, Superior Court, judicial district of New Haven, Docket No. CV-08-5024983 (October 7, 2009); *Lauria* v. *Mennes*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-07-5003950 (October 2, 2007); *Horniatko* v. *Riverfront Assn., LLC*, Superior Court, judicial district of Hartford, Docket No. CV-04-4000332S (June 21, 2005) (39 Conn. L. Rptr. 566); *Worms* v. *WGB Partners, L.L.C.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0149182S (September 26, 1996); *Nadler* v. *Grayson Construction Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-02-0190015S (April 15, 2003) (34 Conn. L. Rptr. 482); *New England National, LLC* v. *Kabro of East Lyme, LLC*, Superior Court, judicial district of New London, Docket No. 550014 (February 23, 2000).

Other courts have treated foreign LLCs as corporations and applied § 33-929 (f). See, e.g., *In re Bayou Hedge Fund Investment Litigation*, 472 F. Supp. 2d 534 (S.D.N.Y. 2007); *Lechner* v. *Capital Group Cos.*, United States District Court, Docket No. 3:05CV1410 (WWE) (D. Conn. May 26, 2006); *Swain* v. *American Capital Strategies, Ltd.*, Superior Court, judicial district of Middlesex, Complex Litigation Docket, Docket No. X04-CV-03-0103924S (August 4, 2004); *Hartford Fire Ins. Co.* v. *United Restoration LLC*, Superior Court, judicial district of Hartford, Docket No. CV-02-0813517 (April 4, 2003).

[25] General Statutes § 33-929 (f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, *by a resident of this state or by a person having a usual place of business in this state*, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . out of tortious conduct in this state . . . ." (Emphasis added.)

[26] The court also found that, by relying on group allegations, the plaintiffs failed to sufficiently allege that the foreign corporations committed tortious conduct within the state. In other words, even if the plaintiffs had satisfied the residency requirements, they nonetheless failed to establish long arm jurisdiction because their allegations were not particularized as to SBA Communications Corporation or Village Ventures Services, Inc. For the reasons set forth in part IV A of this opinion, we agree.

[27] As previously noted, the plaintiffs conceded at oral argument before this court that there was no error as to the trial court's rulings on the

nonexistent and merged defendants.

_____